## HENRY GILLETT
### v.
### SARAH ANN HICKLING, EX., ETC.

1. TRUSTS—EQUITY JURISDICTION.—Where A acquired and held the title to certain real estate in trust, first, as security for his debt, and second, to render to B, the equitable owner, any surplus remaining after such indebtedness should be paid, and, in accordance with an agreement B procured a purchaser to whom A sold the premises for a sum sufficient to pay

the indebtedness and leave a surplus (such surplus being a security not yet collected). *Held* that trusts of this character are enforcible in equ'ty. The agreement, after the sale, entered into for the purpose of limiting the trust to a specific installment of the purchase money, did not change the trust relation of the parties.

2. DEBTOR AND CREDITOR—AGREEMENT.—Where an agreement between debtor and creditor not only provides for the payment of the debt out of a specific fund coming to the debtor, but limits the creditor to such fund, and provides that if that fund fails the debt shall be extinguished, such agreement would operate as an equitable assignment *pro tanto* of the fund.

3. TRUST—NON-FEASANCE OF TRUSTEE.—A court of equity will not permit a trust to fail by reason of the non-feasance or misfeasance of the trustee, but on proper application will take the execution of the trust into its own hands, and afford relief to the *cestui que trust* according to the equities of the case. The fact that the trustee may be amenable to an action at law for his negligence will not prevent a court of equity from assuming jurisd.ction.

4. DECEASED TRUSTEE—PROBATE COURT.—Where a bill seeks to enforce certain equitable rights, which the complainant claims in a specific security which was held by the decedent in his lifetime, and which is now in the hands of his executrix and devisee, such bill is not within the rules applicable to the presentation and allowance of claims against the estate of deceased persons in the probate court.

5. PARTIES.—In suits in chancery all persons whose interests may be affected by the decree should be made parties.

ERROR to the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding. Opinion filed April 8, 1885.

The writ of error in this case brings up for review a decree sustaining a demurrer to a bill in chancery brought by Henry Gillett against Sarah Ann Hickling, executrix of the last will and testament of William Hickling, deceased, and others, and dismissing the bill for want of equity. The bill alleges in substance, that in the early part of 1878 complainant was the equitable owner of lot 9, etc., in Ellis' West addition to Chicago, and occupied the same as a residence; that William Hickling then held the complainant's note for $4,000 secured by a deed of trust on said premises, and that a considerable amount of interest was due on the note; that a contract in writing was thereupon entered into between the complainant and Hickling, in which it was agreed that Hickling should

cause said premises to be sold by the trustee under the deed of trust, and that he should buy the same at such sale; that the amount due on the deed of trust, including the costs of sale, should be ascertained, and that complainant should retain possession of the premises, paying Hickling interest on the amount found due, and that he should have the right at any time within three years to buy the premises from Hickling for the amount so found due and interest, or, if he could find a purchaser, to sell the same and retain the residue of the purchase money, after paying Hickling the amount due him and interest.

That pursuant to said agreement, said premises were sold by the trustee to Hickling, and that upon an accounting between the parties there was found due from the complainant to Hickling, on the first day of May, 1878, including the costs of the sale, the sum of $4,955.59; that complainant remained in possession up to May 1, 1880, paying during all that time interest on said sum, and taxes and insurance, and in all things carried out said agreement; that February 1, 1880, while the agreement was in full force, one McCurdy agreed with the complainant to purchase said premises for $6,000; that by said agreement McCurdy was to pay Hickling interest from that date, and to pay taxes and insurance, and of the purchase money to pay $1,000 on or before May 1, 1881, at which time he was to take a deed of the premises from Hickling and give Hickling his notes, one for $1,000, due on or before May 1, 1882, one for $2,000, due on or before May 1, 1883, and one for $2,000, due on or before May 1, 1884, all with interest at seven per cent. per annum, and secure said notes by a deed of trust on said premises; that afterward, on March 1, 1880, Hickling entered into a con-tract with McCurdy for the sale of said premises upon the terms above set forth, and that an accounting was then had between the complainant and Hickling, by which it was ascertained and agreed that there would be due to complainant, out of the purchase money to be paid by McCurdy, the sum of $983; and that at the same time and as a part of the same transaction, the following agreement was entered into between the complainant and Hickling:

"The undersigned, William Hickling, having sold the premises described as lot 9, etc., of Ellis' West Addition to Chicago, to Albert McCurdy, for the sum of $6,000, to be paid as follows: $1,000 on or before May 1, 1880, $1,000 on or before two years, from May 1, 1880, or as per agreement with Albert McCurdy: I hereby agree to pay Henry Gillett, his heirs, executors or assigns, as commissions, etc., the sum of $983, out of the principal and interest to be paid by said Albert McCurdy, on or before May 1, 1882, and out of said second payment so to be made by said Albert McCurdy only is said Gillett to receive anything. But it is further expressly understood and agreed, and made an essential part of this agreement, that, in case of the destruction of the buildings now situated on said premises, by fire or otherwise, or in case said Albert McCurdy shall fail to carry out the agreement for the purchase of the premises on his part, and to make the above mentioned payment, then this agreement shall become and be absolutely null and void, and said William Hickling shall be released from all liability of any kind or nature whatever, under or by virtue of this agreement, or of anything herein contained.

W. Hickling.<br>
H. Gillett."

That pursuant to said agreement, the complainant, on the 1st day of May, 1880, surrendered possession of said premises to McCurdy, and that the latter, on the 30th day of April, 1881, paid Hickling $1,000 principal, and the interest on said $6,000; that Hickling and wife thereupon conveyed said premises to McCurdy, and said McCurdy executed to Hickling his three notes of that date, one for $1,000, due May 1, 1882; one for $2,000, due May 1, 1883; and one for $2,000, due May 1, 1884; and also interest notes for the several installments of interest, and secured said notes by a deed of trust on said premises; that said Hickling died August 25, 1881, leaving a will by which he devised and bequeathed to his wife, Sarah Ann Hickling, nearly all his estate, worth more than a half million of dollars, over and above his debts, and appointed her his executrix; that said Sarah Ann Hick-

ling thereupon took possession of said notes and deed of trust and still holds possession thereof; that said McCurdy has paid said executrix all the interest on said notes up to May 1, 1884; that under said contract, the complainant has an interest in or lien on said note for $1,000, falling due May 1, 1882, to the amount of $983 and interest, and that said note was taken and held by said executrix subject to said interest.

That said Sarah Ann Hickling should, in equity and good conscience, have made reasonable efforts to collect said note and pay complainant his $983 therefrom, and that with reasonable efforts she might have collected the same; that in violation of her duty toward complainant, she has not only failed to use efforts to collect said note, but, combining and confederating with said McCurdy to keep complainant out of said money, she has refused to receive the principal of said note from McCurdy, and said to him that she did not want him to pay the principal, but only the interest thereon, and that she has refused to account to complainant for the interest collected on said note; that complainant has applied to said Sarah Ann Hickling to collect said note and also for his proportion of the interest collected by her thereon, but she has refused to act or account, and denies that he has any interest therein; that he has applied to her to transfer said note to him, offering to pay her the amount due thereon, less his $983 and interest, which she refused to do; that the whole of the principal sum secured by the deed of trust is due; that the complainant has requested said Sarah Ann Hickling to foreclose said deed of trust, or to join the complainant in a bill for that purpose, but she refuses so to do, or to take any steps to collect said money from said McCurdy.

The bill prays that the interest of the complainant in said note may be ascertained; that an account may be taken of the amount due from McCurdy on said notes and trust deed, and of the amount of interest collected by said Sarah Ann Hickling on said $1,000 note, and of the amount due on said contract; that McCurdy be decreed to pay the amount due from him, and in default of such payment, that said premises may be sold to pay the same, and that the complainant may be

decreed to have a lien ͵on said premises, and also a general prayer for relief.

Mr. Frank Baker, for plaintiff in error; as to agreement between debtor and creditor that the debt shall be paid out of a specified fund, cited Rodick v. Gandell, 1 De G. Mc. & G. 763; Riccard v. Pritchard, 1 Kay & J. 279; Buck v. Swazey, 35 Me. 41; Neaze v. Copehard, 8 W. Va. 95.

As to jurisdiction of equity: Bradley v. Luce, 99 Ill. 243; Lake v. Freer, 11 Bradwell, 576; Jenckes v. Cook, 9 R. I. 520; Coates v. Woodworth, 13 Ill. 654; Johnson v. Johnson, 120 Mass. 461; Davis v. Coburn, 128 Mass. 382; 1ˢt Cong'l So. v. Trustees, 21 Peck. 153; Cooper v. McClun, 16 Ill. 443; Jenkins v. Doolittle, 69 Ill. 402; Trustees v. Gleason, 15 Fla. 384; Jones v. Dougherty, 10 Ga. 289.

The death of the trustee did not oust chancery of its jurisdiction nor compel complainant to seek his remedy in the probate court: Clapp v. Emery, 98 Ill. 523; Atty. Gen. v. Ill. Agl. Coll. 85 Ill. 520; Allen v. Russell, 78 Ky. 105; Bank v. Brocke, 71 Pa. S. 216; Perry on Trusts, § 38; Curtis v. Smith, 6 Blackf. 543; R. S. Ch. 3, § 70; Farelly v. Ladd, 10 Allen (Mass.) 128.

Mr. Lyman Trumbull and Mr. H. B. B. Wickersham, for defendants in error; that the bill is multifarious, cited Story's Eq. Pl. §§ 271, 272.

Where the complainant seeks to recover the value of a supposed interest in certain property upon an alleged contract by the defendant to pay the same to him, his remedy is at law and not in equity: Stewart v. Mumford, 80 Ill. 192; Douglas v. Martin, 103 Ill. 26; Story's Eq. Jur. 794.

If complainant has any claim against the estate of the deceased, having failed to exhibit it to the probate court within two years from the time of granting letters testamentary, the claim is forever barred: R. S. Ch. 3, § 70, p. 7; Harris v. Douglass, 64 Ill. 466; Armstrong v. Cooper, 11 Ill. 561; Freeland v. Dazey, 25 Ill. 296; People v. White, 11 Ill. 341; Reitzell v. Miller, 25 Ill. 64; Wingate v. Pool, 25 Ill. 118; Hall v. Hoxsey, 84 Ill. 616.

BAILEY, J.   According to the case made by the bill, Hickling, being the holder of a deed of trust upon certain premises of which the complainant owned the equity of redemption and which he occupied as a residence, entered into a written agreement with him, by which Hickling agreed to have the premises sold under the deed of trust and to become the purchaser, and to allow the complainant to retain possession by paying interest on the incumbrance, with the right, at any time within three years, to redeem the premises by paying the incumbrance and costs of sale; or, if during that time he could find a purchaser, to retain the surplus of the purchase money, after paying said incumbrance and costs.   Hickling having obtained title in the manner proposed, the complainant continued in possession for two years, paying interest as agreed, and at the end of that period succeeded in negotiating a sale of the property for a sum sufficient to extinguish Hickling's claim and have a surplus of $983.   This sale being satisfactory to Hickling, was agreed to by him, and the first installment of the purchase money being afterward paid, the premises were conveyed by Hickling to the purchaser, and a deed of trust taken, securing the residue of the purchase money.   Of the notes secured by said deed of trust, was one for $1,000, maturing May 1, 1882.

At the time of making the sale Hickling and the complainant executed a second contract, by which Hickling agreed to pay the complainant said sum of $983 out of the principal and interest of the installment of purchase money, payable May 1, 1882, and out of that installment only; and it was also provided that, in case of the failure or refusal of the purchaser to consummate the purchase or to pay that installment, Hickling should be released from the payment of said sum to the complainant.

If we consider first, the relations of the parties as they existed prior to the execution of the last mentioned contract, it can not be doubted that Hickling, in becoming the purchaser of the premises at the trustee's sale under the arrangement alleged in the bill, assumed a trust relation to the complainant.   He acquired and held the title in trust, first, as security

for his debt, and secondly, to render to the complainant any surplus remaining after such indebtedness should be paid. If the complainant had paid the indebtedness in the manner provided in the first agreement, equity would unquestionably have compelled a conveyance of the premises to him. But having procured a purchaser instead, to whom Hickling sold the premises for a sum sufficient to pay the indebtedness and leave a surplus, Hickling held the surplus in trust for the complainant. Trusts of this character are enforcible in equity.

The case, so far as this question is concerned, is very similar to that of Coates v. Woodworth, 13 Ill. 654. There Woodworth, being indebted to Tarbox in the sum of $100, deeded to him certain lands as security for such debt. To pay said indebtedness, Woodworth afterward obtained a loan from Coates and had Tarbox convey the lands to him as security therefor. This loan not being paid at maturity, Coates sold the land for $400 and refused to pay over to Woodworth the surplus after satisfying the loan. Woodworth proceeded in equity against Coates to recover said surplus, and it was held that he was at liberty to pursue his remedy in that forum. On this point the court say: " It is objected that a court of chancery has no jurisdiction, for the reason that the complainant could have recovered the amount due him in an action at law, for money had and received. Admitting that he might have maintained such action in this case, that would not deprive this court of its jurisdiction. Chancery always has jurisdiction to enforce a trust, and that is the object of this bill." We had occasion to examine this question somewhat elaborately in Hubbard v. U. S. Mortgage Co., 14 Bradwell, 40, where a very similar state of facts was presented, and we there reached the same conclusion as to the jurisdiction of equity above announced.

The present case presents stronger grounds for equitable interference than either of the cases above cited. In each of those cases the trustee had reduced the subject of his trust to money, and nothing remained but the payment of the same over to his *cestui que trust*, and it was not clear in either case that the party had not an adequate remedy at law, by an

action for money had and received. But in the present case, with the exception of a small amount of interest, no money appears to have come into the hands of the trustee, but the subject of the trust is a security not yet collected. It is manifest, then, that here an action for money had and received would not afford the complainant an adequate remedy.

We are unable to see that the relations of the parties were changed, so as to materially affect this question by the second agreement. That agreement was entered into immediately after the consummation of the contract of sale, and an accounting between the parties to ascertain the amount of the surplus coming to the complainant. It was not an abrogation of the trust relation between the parties, but rather an admission and affirmation of that relation, and it seems to have been entered into principally for the purpose of limiting the trust to a specific installment of the purchase money and of declaring that the trust should be extinguished if that particular installment should fail.

There are very respectable authorities which would justify us in holding that the last mentioned agreement of itself, without reference to the previous relations between the parties, operated as an equitable assignment *pro tanto*, of the installment of purchase money maturing May 1, 1882. Thus in Rodick v. Gandell, 1 DeG., M. & G. 736, it is held that an agreement between a debtor and creditor that the debt owing should be paid out of a specific fund coming to the debtor, would operate as an equitable assignment of such fund, or as an equitable charge thereon. The same rule is followed in Riccard v. Prichard, 1 Kay & John. 277. Whether this rule is applicable to all cases need not be determined here, but where, as in this case, the agreement not only provides for the payment of the debt out of a specific fund coming to the debtor, but limits the creditor to such fund, and provides that if that fund fails the debt shall be extinguished, it would seem scarcely open to question that the agreement should be held to operate as an equitable assignment, *pro tanto*, of the fund.

In any view of the case, then, it is clear that Hickling, at

Gillett v. Hickling.

the time of his death, held the note maturing May 1, 1882, and the deed of trust securing the same, in trust for the complainant, and said note and deed of trust having come into the hands of defendant Sarah Ann Hickling, it is equally clear that she thereby became charged with the same trust, whether she holds said securities as executrix or devisee of her deceased husband. It became her duty as such trustee, to perform the trust fairly and in good faith. The bill, however, alleges that instead of doing so, she has colluded with the maker of the note to prevent his paying it, and thus deprived the complainant of his equitable rights therein.

It was the duty of Sarah Ann Hickling to use reasonable diligence in making collection of said note, and paying over the proceeds to the complainant to the extent of his interest therein. This she has wholly failed to do. A court of equity will not permit a trust to fail by reason of the non-feasance or misfeasance of the trustee, but on proper application will take the execution of the trust into its own hands, and affords relief to the *cestui que trust* according to the equities of his case. The present bill is framed with a view to such equitable interposition, and there is no reason apparent to us why the case thereby made is not sufficient to warrant the court in taking jurisdiction and administering its relief according to the rights of the parties.

It is claimed that a court of equity should not take jurisdiction because the complainant is entitled to bring his action on the case against the trustee to recover damages for her negligence in not performing the duties of the trust, and thus obtain relief. Without pausing to consider whether such an action would lie, or whether it wou'd furnish the complainant the relief to which he is entitled, it is sufficient to say that it is not the law that courts of equity are powerless to enforce and execute trusts which the trustee neglects or refuses to perform, because the trustee may be amenable to an action at law for his negligence. On the other hand, the negligence of the trustee is the very ground upon which courts of equity assume jurisdiction to interpose and execute the trust.

Again, it is urged that the bill seeks to enforce a claim against the estate of William Hickling, deceased, and that such claim has never been presented or proved against his estate in the probate court, and is now barred from being allowed by that court by the Statute of Limitations. This point is sufficiently answered, by saying that the bill does not seek to enforce a claim against said estate, and is not within the rules applicable to the presentation and allowance of claims against the estates of deceased persons in the probate court. The bill merely seeks to enforce certain equitable rights, which the complainant claims in a specific security which was held by the decedent in his lifetime, and which is now in the hands of his executrix and devisee.

It is further objected that Sarah Ann Hickling ought not to have been made defendant both as executrix and in her own right; and also that McCurdy and wife, the makers of the note and deed of trust, were improperly made defendants. The general rule is, that in suits in chancery all persons whose interests may be affected by the decree should be made parties. It is clear that a decree sustaining the complainant's equitable rights to the note and deed of trust to the extent claimed, would affect the rights of Sarah Ann Hickling both as executrix and devisee; and it is also clear that the makers of a deed of trust are necessary parties to any proceeding in chancery to enforce such security. All of said parties are necessary parties to the bill.

We are of the opinion that the court erred in sustaining the demurrer to the bill, and the decree will therefore be reversed and the cause remanded to the court below, with directions to overrule the demurrer and for further proceedings.

Decree reversed.