THE NEW CASTLE COUNTY NATIONAL BANK OF ODESSA,

*vs.*

ANNIE C. TAYLOR AND MARTIN B. BURRIS, administrators of WILLIAM TAYLOR, deceased, THE PENNSYLVANIA RAILROAD COMPANY, THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY, THE WEST JERSEY AND SEASHORE RAILROAD COMPANY, AND THE PHILADELPHIA AND CAMDEN FERRY COMPANY.

*New Castle, March T.* 1900.

Where orders on a railroad company for the payment of the price of merchandise delivered to it, together with its certificates issued to the seller of the merchandise showing what was received and the price to be paid, are deposited with a bank as collateral security for the promissory notes of the person to whom the money is due from such railroad company, and for the general balance of

his indebtedness; and vouchers for several of the sums due, but not all of them, were issued by the railroad company to the maker of the notes and orders in his lifetime, and by him delivered to the bank; no notice of the assignment of the debt having been given by the bank to the railroad company during the lifetime of the maker of the notes and orders: *held*, that the transaction constituted an equitable assignment to the bank of the debt due from the railroad company, including both that represented by vouchers and that for which none had been received, and that after the death of the maker of the notes such assignment would be enforced by requiring the administrators to assign the vouchers to the bank, and the railroad company to pay the same, and also to pay to the bank the balance of the indebtedness to the decedent for which no vouchers had been issued.

BILL TO ENFORCE AN EQUITABLE ASSIGNMENT.—The complainant was a national banking association organized under the laws of the United States and carrying on the business of banking at Odessa, in New Castle County. It appeared that William Taylor, deceased, was engaged in the business of furnishing lumber to the railroad companies, and for each separate lot of lumber so furnished, the company gave to him what was termed a "report," which was in substance an acknowledgment in writing by the railroad company that it had received from the said Taylor certain quantities of lumber as specified therein, and the price to be paid therefor.

In the course of its business as a bank, the complainant made loans to said Taylor during his lifetime, for the greater part of which he had delivered to the complainants his promissory notes, and with said notes, as collateral security for the payment of the same, and also for the payment of the balance of said Taylor's general indebtedness to the complainant, which was at his death $97.61, in addition to the notes, he had from time to time delivered to the complainant the said railroad reports issued by the Pennsylvania Railroad Company, in some cases for its own account, and in some cases for the account of its subsidiary companies, the other respondent corporations.

These reports represented the obligation of the corporation in each case to pay for lumber furnished by William Taylor, deceased, during his lifetime, and the said Taylor by

written orders signed by him and also delivered to the complainant, requested the Pennsylvania Railroad Company to make payable to the order of the Cashier of the complainant its vouchers for the lumber reports mentioned in such orders respectively.

The promissory notes held by the Bank, were made by William Taylor to the order of himself, and by him endorsed. Five of the railroad companies' vouchers for amounts due for lumber so furnished, amounting in the aggregate to $3624.97, were made out in the name of Taylor during his lifetime and were delivered to the complainant. There was also due from the said railroad companies in the aggregate, the sum of $3,612.10, on the various reports which had been delivered to the complainant, as collateral security for other notes to the amount of $3,527.31 and the general balance of $97.61, for which no vouchers had been issued.

No notice had been given to the railroad companies of the assignment of the claim of Taylor against it for the payment of the lumber delivered, until after his death, and the complainant had not presented the orders or reports to the railroad company, but withheld the same during his lifetime.

William Taylor died November 11, 1899, intestate, and letters of administration upon his estate were granted by the Register of Wills for New Castle County to the respondents, Annie C. Taylor and Martin B. Burris, who had duly qualified as such administrators.

The complainant had, immediately after the death of William Taylor, given notice to the railroad company that it held the orders, reports, promissory notes and five vouchers issued to William Taylor, as aforesaid, and demanded payment from the said railroad companies for the sums payable by said vouchers respectively, or that the railroad company should make and issue alternative vouchers to the complainant in lieu of those issued to William Taylor, and not signed by him, but the said railroad company had refused such payment.

The complainant had also requested the administrators of William Taylor to sign the said vouchers and thereby au-

thorize their payment to the complainant, but this the administrators refused to do.

It was alleged that the estate of William Taylor was insolvent and unable to pay to the complainants the money due upon said promissory notes.

The bill sought a decree declaring that the complainant held the said vouchers and claims against the railroad company under an equitable assignment of the same. The special prayers of the bill were that it be decreed that the complainant held the said claims under an equitable assignment and that the administrators of William Taylor, deceased, should be decreed to assign to the complainant the said five vouchers, and that the respondent companies should pay the same respectively.

The administrators filed an answer substantially admitting the facts set forth in the bill, and the corporation respondents also filed a joint answer not admitting the facts, except as to the issuing of the vouchers, which was admitted. They denied having any knowledge of the assignment of the vouchers to the complainant, or of the transactions between William Taylor and the complainant, and disclaimed any interest in the controversy, tendering themselves ready and willing to pay the amounts due and owing from them respectively to such party as might be entitled to receive payment under the decree of the Court. Testimony was taken before an examiner on behalf of the complainant and the allegations of the bill were substantially proved by the testimony of the complainant's cashier and the documentary evidence submitted by him.

The amount of credits to which the account of the complainant against the estate of William Taylor was entitled was ascertained by the agreement of counsel.

The respondents submitted the case without offering any proof.

The case came to a hearing on May 17, 1900, upon bill, answer and proofs of the complainant.

*Anthony Higgins*, for the complainant.

These transactions as set forth in the bill and exhibits attached thereto, and as established by the depositions and exhibits therein, constitute an equitable assignment to the complainant.

It is an established doctrine, that an equitable assignment of a specific fund in the hands of a third person creates an equitable property in such fund. If therefore A, has the specific fund in the hands of B, or in other words, B, as a depoistory or otherwise, holds a specific sum of money which he is bound to pay to A, and if A agrees with C that the money shall be paid to C, or assigns it to C, or gives to C an order upon B for the money, the agreement, assignment, or order creates an equitable interest or property in the fund in favor of the assignee C, and it is not necessary that B should consent or promise to hold it for or pay it to such assignee. 3 *Pom. Eq. Jur. sec.* 1280.

The principle to be deduced from the cases, is that an agreement between a debtor and a creditor that·the debt owing shall be paid out of a specific fund coming to the debtor, *Rodick vs. Gandell*, 1 *De Gex M. & G.* 763, 777, or an order given by a debtor to his creditor upon a third person, having funds of the debtor, to pay the creditor out of such funds will create a binding equitable assignment of so much money. *Burn vs. Carvalho*, 4 *Myl. & C.* 690, 702; *Ryall vs. Rowles*, 2 *L. Cas. in Eq.* (4th Am. Ed.) 1562, *note*.

Nor is it necessary in equity, that the party receiving the order should enter into a contract to hold the funds for the equitable ,assignee. *Burn vs. Carvalho, supra;* 2 *White & Tud. L. C.* 562.

It is not necessary to the validity of the assignment of a debt, as between the assignor and assignee, that notice should be given to the party from whom the debt is due. 2 *White & Tud. L. C.* 1564; *Rodick vs. Gandell, supra.*

The death or bankruptcy of the assignor before notice could be given of the assignment, or before it could be acted upon is immaterial. 2 *White & Tud. L. C.* 1564; *Gurnell vs. Gardner*, 4 *Giff.* 626; *Burn vs. Carvalho, supra; Ex parte South*, 3 *Swanst.* 392.

Opinion:—equitable assignment.

*John P. Nields*, for the respondents, William Taylor's Administrators.

*John Biggs*, for the respondent corporations.

THE CHANCELLOR was of opinion that the orders signed by the said William Taylor, deceased, and delivered by him to the complainant as collateral security for the payment of his notes and of the balance of $97.61 remaining due over and above the said notes, constituted and were an equitable assignment to the complainant by the said William Taylor of the respective sums due him from the respondents, the Pennsylvania Railroad Company and its subsidiary companies, stated in the several orders and accompanying reports, set forth in the bill and proofs in this cause, and that thereby the complainant became and was entitled to receive the said moneys from the said respondent companies.

He also considered that the administrators of William Taylor, deceased, should be required to assign to the complainant the said several vouchers, now in its possession, and that when the said vouchers should be so assigned that the respondent companies should be required severally to pay to the complainant the respective sums of money specified in said vouchers, and further, that the said respondent corporations should also be required to issue to the complainant their vouchers or checks for such or so much of the balance. of the aggregate sum of money due for lumber sold and delivered by the said William Taylor, as should remain unpaid after deducting the aggregate amount covered by the vouchers issued to William Taylor in his lifetime.

A decree was entered accordingly, the costs to be paid by the complainant.