DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1908.

Charles W. Colehour et al., Appellants, v. George Bass Appellee.

### Gen. No. 13,244.

Charles W. Colehour, et al., Plaintiffs in Error, v. Ira J. Geer, Executor, etc., Defendant in Error.

### Gen. No. 13,801.

Charles W. Colehour et al., Appellants, v. George Bass et al., Appellees.

### Gen. No. 13,611.

### Consolidated for Hearing.

1. Costs—*power of court to order payment of master's fees.* Where it appears that a master in chancery has performed services and earned fees in connection with pending litigation and with reference to the fund which was in the possession of the court in such litigation for administration and settlement, the court has power to order the fees of such master to be paid out of such fund.

2. Assignments—*what constitutes equitable.* A written acknowledgment of an indebtedness and an agreement to pay the same out of a fund in litigation, which likewise contains a consent to the entry of an order by the court decreeing such payment, constitutes an equitable assignment of the fund in litigation to the amount of the indebtedness in question.

3. Assignments—*what essential to equitable.* No particular

(530)

form of words is necessary in order to constitute an assignment valid in equity. Any instrument is sufficient which shows an intention of transferring or appropriating a fund or chose in action to the assignee for a valuable consideration to constitute an assignment in equity.

4. ASSIGNMENTS—*rights of equitable assignee.* A person having an equitable assignment of a fund which is in control of the court will be permitted, under the modern equity practice, to file an intervening petition in the cause wherein the court has control of the fund and set up his interest therein, and his interest will be protected by the court.

5. PRACTICE—*when not error to refuse to set aside default.* It is not error for a court of chancery to refuse to vacate a default if the motion to vacate is unaccompanied by an answer and if the affidavit made in support of the motion fails to show the necessary diligence upon the part of the moving party.

6. PRACTICE—*when answer may not be filed as matter of right.* The mere fact that a court of chancery permits an amendment correcting a clerical error, does not authorize a party, as a matter of right, to file an additional answer.

Bill in chancery. Appeals from and error to the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed October 6, 1908. Rehearing denied October 23, 1908.

**Statement by the Court.** These cases are here upon appeals and a writ of error. The appeal in No. 13244 brings up for review a decree of the Circuit Court in favor of appellee George Bass allowing to him fees as a master in chancery. The writ of error in 13801 brings before us for review a decree of the Circuit Court entered April 30, 1906, in favor of George Bass and Ira J. Geer, executor of the will of William C. Goudy, deceased, and also a decree entered October 24, 1906, in favor of Geer, as executor, and Bass. And the appeal in No. 13611 brings up for review a decree entered in the Circuit Court October 24, 1906. These decrees were entered in the litigation known to the courts and the profession as Colehour v. Roby. An order was entered by this court July 16, 1907, consolidating the three cases in this court.

The history of the litigation in Colehour v. Roby

up to the dates of the opinions in Roby v. Colehour, 135 Ill. 300; Roby v. Colehour, 146 U. S. 153; and in Roby v. Title Guarantee & Trust Co., 166 Ill. 336, is stated in those cases. It was begun in January, 1890, by the filing in the Circuit Court of four separate bills which were afterwards consolidated, and in May, 1890, William H. Colehour filed a cross-bill against Roby and Charles W. Colehour. Upon the issues made and the evidence offered a decree was entered by the Circuit Court which was affirmed in Roby v. Colehour, *supra*.

A receiver was appointed and the record shows receiver's accounts, petitions presented by the receiver and orders entered thereon, and actions taken by the receiver in pursuance of the court's directions, the main features of which may be indicated as follows:

The receiver was unable to realize by sales of the lands sufficient funds to make redemptions and pay the taxes upon the land; it was authorized to advance money to pay the taxes and was allowed interest upon its advances for that purpose, and was given a lien upon the land for moneys so advanced, subject only to the liens established by the decree, and the advances so made were to be paid out of the sales of the land. The receiver was authorized to issue receiver's certificates bearing interest at eight per cent. and to raise $110,000. It was afterwards authorized to take up these certificates with its own funds at seven per cent. interest and was given a first lien on the trust estate. With the money raised and advanced by the receiver redemptions were made from tax liens and foreclosure sales. On March 7, 1893, the receiver's disbursements in excess of its receipts were upwards of $100,000.

The accounts of the receiver were referred to a master in chancery, whose report was approved by the court in the decree of January 30, 1896, which was affirmed by the Supreme Court in Roby v. Title Guarantee & Trust Co., *supra*.

William H. Colehour died June 30, 1895, leaving him surviving his widow Carrie M. Colehour, and two daughters, Carrie and Edith; and by his will he made his widow sole devisee of his estate. The cause was revived and proceeded in the name of the widow and two daughters above named in place of said William H. Colehour, deceased.

A decree was entered April 24, 1896, based upon the master's report on the accounting, and the evidence returned therewith. By this decree it was adjudicated that Carrie M. Colehour, as executrix of the estate of William H. Colehour, was entitled to his share in the net profits to be derived from the sale of lands; that Edward Roby owed the trust estate $37,961.93; that Carrie M. Colehour, as executrix, owed said trust estate $5,361.76 and owed Roby $400; and that the trust estate owed Charles W. Colehour $43,656.68; and that in order to properly adjust the rights of said parties as in the decree of June 12, 1890, and in this decree declared, it was necessary to sell and convert into money all the real estate belonging to said trust estate remaining unsold in the possession and control of said receiver. No appeal was ever perfected from this decree.

The appellees and defendant in error George Bass, and Ira J. Geer, executor, etc., filed separate intervening petitions by leave of court, praying for relief against the estate in the hands of the receiver.

George Bass was the master in chancery to whom, by the decree of June 12, 1890, the cause of Colehour v. Roby was referred for an accounting. There was also a reference to him of the cause by an order entered February 24, 1890. Much testimony was taken and reported and applications were made to the court to secure the payment of his master's fees, and two orders or decrees were entered in the cause in his favor prior to the decree of June 25, 1906, now before us.

The first order or decree upon the claim of Bass

was entered July 8, 1892, upon a petition by him, by which the receiver was ordered to "pay said master the sum of $393 for taking testimony on the part of said complainant," as soon as the receiver should have money belonging to said estate after paying the present indebtedness of the receiver in behalf of said estate. This was for testimony taken before the case went to the Supreme Court.

The second order or decree in favor of Bass was entered May 4, 1895, on the motion of Charles W. and William H. Colehour, finding that there was due him $2,000 for taking testimony and for his reports and his various charges since June 12, 1890, and that said sum be paid to him by the receiver with five per cent. per annum thereon out of any money in the receiver's hands belonging to said Charles W. Colehour and William H. Colehour or either of them.

The services for which compensation was allowed by the second decree were additional to those covered by the first decree.

On June 21, 1905, Bass filed an amended petition which set up the decrees for $393 and $2,000 and the decree of June 12, 1890, appointing the receiver and ordering a sale of the property, and the decree of April 23, 1896, in which the court declared that to adjust the rights of the parties it was necessary to sell all the real estate belonging to the trust, and directed sales to be made. The amended petition shows that some of the property is still unsold, and alleges facts tending to show the futility of further delay in selling, and prays for a rule upon the parties to show cause why said fees should not be paid, and that the receiver, if without funds, be directed to sell, and for general relief.

A hearing was had on this petition and answers thereto, and the decree of June 25, 1906, now before the court for review, was entered. The decree finds the entry of the two previous orders or decrees for $393 and for $2,000 and interest; that no part thereof

has been paid; that the Chicago Title & Trust Company is the present receiver, and that said Bass is entitled to be paid the said sum of $393 as soon as the receiver has moneys as the proceeds of the property in its hands, after paying itself; that Bass is also entitled to be paid $2,000 with interest at five per cent. from May 4, 1895, out of any moneys that may at any time be in its hands belonging to Charles W. Colehour or the estate of William H. Colehour, deceased, or either of them; and that it appears from the receiver's report that it has no moneys out of which to pay either sum or any part thereof. It is ordered that Bass have leave to apply hereafter for an order respecting the payment thereof; and further, that the decree entered in the cause April 24, 1896, shall be regarded as in full force and effect and unaffected by any agreement of settlement that may have been made since its entry.

Charles W. Colehour, Carrie M. Colehour and Edward Roby were allowed an appeal jointly or severally. Charles W. Colehour and Edward Roby gave bond and perfected this appeal from that decree.

The writ of error in No. 13801 brings before us for review a decree entered April 30, 1906, in favor of Ira J. Geer as executor of the last will of William C. Goudy, deceased, against Charles W. Colehour et al., the plaintiffs in error. The decree finds and adjudges that Geer as executor is entitled to have and recover from Carrie M. Colehour $11,300.98, and from Charles W. Colehour and Carrie M. Colehour $17,419.14, and that said sums are payable out of such funds, if any, as may be in the receiver's hands after paying costs, etc.

The appeal in No. 13611 is from the order or decree of October 24, 1906, which was entered under the following circumstances: After the entry of the decrees in favor of Bass, and of Geer, as executor, a decree or order was entered on August 23, 1906, by a judge of the Circuit Court, sitting to hear emergency matters

during the so-called summer vacation period. This order was entered without notice to either Bass or Geer, and recited that the Colehours and Roby had settled their differences, and directed that the decree of April 24, 1906, determining their interests and the necessity for the sale of all the property be annulled, and that all provisions of the decrees in said cause as to costs be vacated, and that no costs be recovered by or against any party, etc. On the motion of Bass and Geer, made at the same term of court and continued, the order of October 24, 1906, appealed from, was entered, modifying the order of August 23, 1906, so that nothing contained therein shall prejudice or in any wise affect the rights or liens of Bass or Geer under said respective decrees theretofore entered, and holding their said rights and liens in full force and effect, and not affected by the order of August 23, 1906.

EDWARD ROBY, for appellants and plaintiffs in error.

TIMOTHY F. MULLEN, IRA J. GEER and J. R. CUSTER, for appellee and defendant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The first general contention on behalf of appellants is that the nature of the suit and the proceedings in Colehour v. Roby and the receivership therein were of such a character that neither Bass, nor Geer, as executor, etc., could have or acquire any standing in the case for relief, and therefore the orders or decrees giving them relief were and are erroneous.

In support of this position much of the argument of counsel for appellants is based on matters which must be regarded as settled adversely to appellants' contentions by the decrees of June 12, 1890, and of January 30, 1896, which have been affirmed by the Supreme Court. Roby v. Colehour, 135 Ill. 300, and Roby v. Title G. & T. Co., 166 id., 336. These decrees are bind-

ing adjudications under which the title and possession
of the property involved became vested in the receiver.
The Colehours and Roby were adjudged partners in
the net profits of the venture and their proportionate
interests in the profits and also their rights *inter se*
were settled. Before the decrees now before us for
review were entered, it had also been adjudged neces-
sary in order to adjust the rights of the parties to sell
and convert into money the entire property in the re-
ceiver's hands. The propriety of the appointment of
the receiver and the powers conferred upon the re-
ceiver are settled, we think, by those decrees, whether
all the questions upon those decrees were raised in the
Supreme Court or not, on the appeals prosecuted
therefrom. In our opinion the original suits were
brought to settle a partnership, and under the plead-
ings an accounting was necessary for that purpose.
The court had the power to appoint the receiver and
order the parties to convey their titles to the lands in
controversy to the receiver as a necessary step to pre-
serve and protect the partnership assets and to a
proper administration of the partnership affairs. The
receiver was not a mere trustee only with the powers
limited by the order of appointment, but it was the
hand of the court in the practical settlement of the
controversy before the court; and the powers of the
receiver might be enlarged or withdrawn as the exi-
gencies of the situation demanded, in working out the
equities of the case. These appeals, and this writ of
error, do not bring before us any questions of that
nature. The relief asked for by the appellees and the
defendant in error was subordinate to such orders and
proceedings, and in recognition of their validity, and
the relief granted was of the character asked by the
petitions. All errors therefore assigned upon other
orders or decrees than those before us must be disre-
garded, and likewise all arguments based thereon.

Regarding the decree of June 25, 1906, the record
shows that Bass was a master in chancery of the Cir-

cuit Court in which the litigation was pending, and
that the fees charged and allowed were incurred by
the parties for the master's services under orders of
reference. The items allowed were not at the time
they were allowed questioned by Charles W. Colehour
and William H. Colehour, at whose instance and re-
quest, as well as at the request of Bass, they were or-
dered paid out of the Colehour fund in the receiver's
hands. It appears that the master's services were
performed and his fees earned in the litigation, and
with reference to the subject of the litigation or fund
which was in the possession of the court for adminis-
tration and settlement. We think the court had the
power to protect its officers and order the fees to be
paid out of the funds named in the decree. 2 Daniels
Ch. Pr., pars. 1378 and 1380; 2 Beach Modern Eq. Jur.
979, sec. 1013. Courts of equity have a large discre-
tion in the matter of costs, and frequently give costs
in intermediate stages of a case without waiting for a
final decree. 11 Cyc. 98; Avery v. Wilson, 20 Fed.
R. 856.

The objection that the petition of Bass is informal
is without merit, for no petition was necessary. A
mere motion was sufficient.

In our opinion, the decree of June 25, 1906, is free
from material error and must be affirmed.

The decree of April 30, 1906, in No. 13801, in favor
of defendant in error Ira J. Geer, executor, etc., is
based on a claim for services rendered and loans to the
Colehours guaranteed by William C. Goudy, deceased,
in his lifetime, in regard to the lands involved in this
cause, and other lands. Mr. Goudy as solicitor for the
Colehours procured the decree of June 12, 1890, in
favor of the Colehours and against Roby declaring
that the lands and lots involved in the litigation were
unlawfully held by Roby, directing an accounting and
appointing a receiver to take title to the property and
to hold and sell it, etc.

The trust estate was liable to be lost by the expira-

tion of redemption under foreclosure. At the last moment and under the most difficult circumstances Mr. Goudy procured loans of about $146,000, $110,000 of which was secured by receiver's certificates, the payment of which was personally guaranteed by him. Roby v. T. G. & T. Co., *supra.*

It appears that in June, 1891, Mr. Goudy and the Colehours made a settlement of the amounts then due to Mr. Goudy from the Colehours, and they gave him three written instruments dated June 30, 1891, acknowledging the indebtedness to him and assigning to him the amounts thereof out of the moneys to become due to the Colehours from the sale of the lands by the receiver. These three instruments are shown by the exhibits attached to the petition of Geer designated as "Exhibit A," "Exhibit B," and "Exhibit C," respectively in the record. The last one, "Exhibit C," is different in form from the others and does not contain formal words of assignment, but it contains an acknowledgment of the indebtedness and an agreement to pay it out of the fund in question and authorizes and consents to the entry of such an order by the court whenever Goudy shall apply for the same. We are of the opinion that it was an equitable assignment by the Colehours of the amount therein named out of their shares of the estate in the receiver's hands.

The record shows that Mr. Goudy continued to render services to the Colehours until his death, April 27, 1893, and that the Colehours at that time owed him further moneys for legal services and disbursements. On September 19, 1893, the Colehours executed an assignment to the executors of Mr. Goudy for $1,622, to be paid out of moneys due to them arising from the sales of lands by the receiver, with interest thereon at five per cent. The assignment contained their consent to the entry of an order in the case for the payment of the money by the receiver.

On June 30, the first three instruments above named were exhibited to the receiver, and on December 13,

1893, the fourth one of said instruments was exhibited to the receiver. Copies of said instruments were also furnished the receiver, and the record shows the admission by the receiver of such copies.

The intervening petition of Geer as executor is based upon the instruments above enumerated, and sets up the death of Mr. Goudy, the probate of his will, the death of the other executor, the death of William H. Colehour and the probate of his will devising his estate to Carrie M. Colehour, his widow, and the amounts due on said instruments, and prays for an order or decree directing the receiver to pay out of any proceeds of the trust estate belonging to the Colehours the moneys mentioned in said instruments after payment by it of costs and moneys borrowed by the receiver.

Answers were filed by the receiver and Charles W. Colehour, and the defaults of Carrie M. Colehour and Roby were entered after said respondents were ruled to answer. Proof was made in open court of the averments of the petition, and the court allowed the claims set up therein, and thereupon entered the decree sought to be reversed by this writ of error.

We are of the opinion that the instruments attached to the intervening petition as exhibits and executed by the Colehours to Goudy and his executor were equitable assignments of funds in the control of the court through its receiver or of funds to be derived from the sale of property in the control of the court, which gave Geer, as executor, the right to intervene in the case. No particular form of words is necessary in order to constitute an assignment valid in equity. Any instrument is sufficient which shows an intention of transferring or appropriating a fund or chose in action to the assignee for a valuable consideration to constitute an assignment in equity. Am. Eng. Ency. of Law, Vol. 2, 1055; 2 Story's Eq. Jur. (12 Ed.) p. 266; Savage v. Gregg, 150 Ill. 161.

A person having an equitable assignment of a fund

which is in control of the court will be permitted, under the modern equity practice, to file an intervening petition in the cause wherein the court has control of the fund and set up his interest therein, and his rights will be protected by the court. Marsh v. Green, 79 Ill. 385; Phillips v. Edsall, 127 *id.* 535. We think Geer, as executor, etc., had a right to exhibit his petition, and that the court did not err in protecting and enforcing the clear intent and effect of the instruments upon which the petition is based. Gage v. Cameron, 212 Ill. 171; Wightman v. Yaryan Co., 217 *id.,* 376.

The recitals of the record showing jurisdiction over Roby and Carrie M. Colehour are sufficient and conclusive. The order of revivor on the death of William H. Colehour adjudged that the suit be revived and continued in the name of Carrie M. Colehour, the widow and sole devisee, and Carrie Colehour and Edith Colehour, "they standing in said suit in the name and stead of said William H. Colehour, according to their respective interests and rights in and to the estate of said William H. Colehour or touching the same." Carrie Colehour and Edith Colehour were not interested in the property, and therefore were not necessary parties to the petition.

The motion of Roby on April 25, 1906, to vacate the default entered July 21, 1900, was not accompanied with an answer; and the affidavits in support of the motion failed to show the necessary vigilance on his part. Burge v. Burge, 88 Ill. 164; Dunn v. Keigan, 3 Scam., 297.

The amendment of "Exhibit B" attached to the petition, made at the hearing by leave of court, by simply correcting a clerical error in the figures making the date 1885 instead of 1895 as recited in the exhibit, did not entitle the parties to file an answer subsequently when the draft of the decree was presented to the court for entry. No new matter was presented by the amendment. No new issue was raised. It was within the reasonable discretion of the court under the cir-

cumstances to allow or refuse leave to answer, and we think the court did not err in refusing leave to answer. Mosier v. Knox College, 32 Ill. 155; Farwell v. Meyer, 35 *id.*, 41; Gordon v. Reynolds, 114 *id.*, 118; Booth v. Wiley, 102 *id.*, 84. The decree in No. 13801 is free from material error, we think, and must be affirmed.

This brings us to the decree of October 24, 1906, from which Charles W. Colehour and Roby prosecute an appeal in No. 13611.

The record shows that after the above decrees had been entered in favor of Bass, and Geer, as executor, Mr. Roby, without notice to anyone, on August 23, 1906, went before one of the judges of the Circuit Court, sitting during the summer vacation period to hear emergency matters, and procured to be entered the order of that date shown in the record.

We think the decree of August 23, 1906, was inadvertently entered. It seriously affected the rights and interests of Bass, and Geer, as executor, without any notice to them or opportunity to be heard. As soon as the intervening petitioners Bass and Geer learned of the entry of the decree, and at the same term of court, they gave notice and entered a motion to vacate the decree. The motion was entered of record and was continued to October 8, 1906. On that day it was further continued to October 11, 1906, and then was again continued to October 24, 1906, when upon full hearing the decree of that date was entered, modifying the decree of August 23, 1906. In our opinion the decree of October 24, 1906, appealed from, was just and proper, and it is affirmed.

The decree of June 25, 1906, in No. 13244, and the decree of April 30, 1906, in No. 13801, and the decree of October 24, 1906, in No. 13611, are each affirmed.

*Affirmed.*