ROYAL INSURANCE COMPANY, LIMITED, a corporation of the United Kingdom of Great Britain,

*vs.*

LOUIS SIMON, SWIFT & COMPANY, an Illinois corporation, MORRIS SHANIS, CHARLES Y. FOX, ELI E. DAVIS and WILLIAM A. LINDSEY, trading as Githens, Remsamer and Company, INDUSTRIAL TRUST COMPANY, a Delaware corporation, SECURITY TRUST COMPANY, a Delaware corporation, WORKINGMEN'S SELF HELP ASSOCIATION, INC., a Delaware corporation, KRAMEDAS-HUDSON CO., INC., a Delaware corporation, CIROALO-VASSALLO AND KRAMEDAS, INC., a Delaware corporation, WILMINGTON PROVISION COMPANY, a Delaware corporation, PRICE ADJUSTMENT BUREAU and PERCY WARREN GREEN.

*New Castle, July 25, 1934.*

*Charles F. Curley,* for complainant.

*H. Albert Young,* for Louis Simon.

*Josiah Marvel, Jr.,* of the firm of Marvel, Morford, Ward & Logan, for Swift & Co.

*Leslie H. Gluckman* and *Herman Cohen,* for Morris Shanis.

*Leonard G. Hagner,* for Charles Y. Fox and others, trading as Githens, Remsamer &. Co.

*John B. Jester,* for Industrial Trust Co.

*James M. Malloy,* for Security Trust Co.

*H. Albert Young,* for Workingmen's Self Help Association, Inc.

*Elwood F. Melson,* for Ciroalo-Vassallo & Kramedas, Inc.

*Edmund S. Hellings,* for Wilmington Provision Co.

*Harry Rubenstein,* for Price Adjustment Bureau.

*Percy Warren Green, in propria persona.*

THE CHANCELLOR: This case presents the demands of rival claimants to have their respective claims paid out of a judgment which Simon recovered against the complainant for loss suffered by him under fire insurance contracts.

1. One of the claimants is Percy Warren Green who acted as attorney for Simon and conducted the suit which eventuated in the judgment. He contends that he is entitled to a lien ahead of other claiming defendants whose rights are based on execution attachments laid by them as the judgment creditors of Simon in the hands of the insurance company, his debtor. Green undertook to protect his lien by having the judgment marked to his use. His contention presents the question of whether an attorney is entitled to a lien upon a judgment recovered by him for professional services rendered by him in prosecuting the claim on which the judgment was obtained.

There is no statute in the state governing the subject. Liens of attorneys are of two sorts—retaining liens and charging liens. A retaining lien is the right of an attorney to retain possession of documents, money or other property in his possession belonging to his client which he acquired

in the course of his professional relationship, until he is paid the full amount due from the client for professional services rendered. Green does not claim to possess a lien of that kind. He claims a charging lien. A charging lien is defined as "the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected." 2 *Thornton, Attorneys at Law*, § 578.

In many of the states charging liens are recognized by statute. Where there is no statute, however, as in Delaware, the authorities accord recognition to their existence. The cases are cited in 2 *Thornton, Attorneys at Law*, § 579; 6 *C. J.*, p. 766, § 364; 2 *R. C. L.* 1069, § 160. The theory upon which the so-called lien rests is variously stated. In some cases it is placed on the equity of an attorney to be paid his fees and expenses out of the judgment in the securing and therefore creation of which he had contributed of his services, skill and, in case of disbursements, of his money. *Coughlin v. N. Y. Cent. & H. R. R.*, 71 *N. Y.* 443, 27 *Am. Rep.* 75. His claim is analogized in principle to that of a mechanic or artisan who is given a lien against the structure or the chattels to the erection, making or repair of which his labor and skill have been contributed (*Coughlin v. N. Y. Central & H. R R. Co., supra; Weed Sewing Machine Co. v. Boutelle*, 56 *Vt.* 570, 48 *Am. Rep.* 821), though of course in the case of the mechanic's lien the principle derives its sanction from statutory enactment. The Maine courts have placed an attorney's charging lien upon the theory that there has been the equivalent of an assignment as collateral security for his fees and disbursements. *Hobson v. Watson*, 34 *Me.* 20, 56 *Am. Dec.* 632; *Newbert v. Cunningham*, 50 *Me.* 231, 79 *Am. Dec.* 612. Let the theory be as it may, the rule aside from statute appears to be established by the preponderating weight of the authorities that an attorney is entitled to assert and enforce what is commonly described

as his charging lien; and the prevalence of so many statutes in which the lien is recognized and its enforcement regulated is rather strong and convincing evidence of the justice and equity which underlie it.

Green's retainer by Simon was on a contingent basis. On the brief filed by the solicitor for the Industrial Trust Company it is stated that a charging lien is allowed only for services rendered and not for a share of the recovery stipulated for in the contract of retainer. *Kauffman v. Phillips*, 154 *Iowa*, 542, 134 *N. W.* 575, and *Gibson v. Chicago, etc., Railroad Co.*, 122 *Iowa*, 565, 98 *N. W.* 474, are cited in support of that statement. If by the statement, it is meant that an attorney cannot contract to be paid his fee out of the recovery obtained in the suit conducted by him, the cases cited do not support it; and *Bayard v. McLain*, 3 *Harr.* 139, decided by the old Court of Errors and Appeals of this State refutes it. The statement on the brief of the solicitor for the Industrial Trust Company is evidently quoted from 6 *C. J.*, *p.* 770, § 368. It has no pertinency to the instant case as a reading of the two Iowa cases cited in support of the *Corpus Juris* text will disclose. Those were cases where the attorney was employed on a contingent basis and was dismissed from his employment before rendering the services. In the instant case the attorney rendered the services to the full and secured the judgment.

If the question here were between Green and his client, Simon, the former's claim to a charging lien would prevail. It prevails with equal effectiveness as against Simon's attaching creditors. *Weed Sewing Machine Co. v. Boutelle, supra; Hutchinson v. Howard*, 15 *Vt.* 544.

The conclusion on this branch of the case is that as against the attaching creditors Green has the first claim on the fund which the complainant has paid into court.

2. Another claimant is Harry I. Price, trading as Price Adjustment Bureau. The fund is large enough to pay both Green and Price. Their relative rights need therefore not

be considered. Price, like Green, stands in opposition only to attaching creditors.

The claim of Price rests on a written assignment made by Simon to him of so much of any moneys which Simon might recover from the insurance company as would be necessary to repay to Price the total of advancements of cash which he would make to Simon together with out of pocket expenses incurred by Price in the course of endeavoring to adjust Simon's claim and compensation to Price for rendering assistance and advice as an expert in prosecuting insurance claims—said compensation to be ten per cent. of any recovery.

On the faith of the assignment, Price advanced to Simon two hundred and fifty dollars in cash, and incurred expenses in the amount of $67.50. He also rendered the services agreed to be rendered by him in connection with the prosecution of the suit which eventuated in the judgment. Having paid the stipulated consideration, he is, therefore, an equitable assignee to the extent of his claim. *New Castle County National Bank v. Taylor, et al.*, 8 *Del. Ch.* 456, 68 *A.* 387; *Bradford Co. v. United Leather Co.*, 11 *Del. Ch.* 110, 97 *A.* 622; *Poole v. Betts, Adm'x.*, 18 *Del. Ch.* 15, 156 *A.* 251; *Cogan v. Conover Mfg. Co.*, 69 *N. J. Eq.* 809, 64 *A.* 973, 115 *Am. St. Rep.* 629; *Terney v. Wilson*, 45 *N. J. Law*, 282; *Williams v. Ingersoll*, 89 *N. Y.* 508; *Colehour v. Bass*, 143 *Ill. App.* 530; *Gillett v. Hickling*, 16 *Ill. App.* 392. Simon cannot question Price's right to be paid.

Can Simon's attaching creditors prevail over Price? It is to be noted that the attachments of the creditors (excepting three) are posterior to Price's assignment. The three that are prior are not large enough to exhaust the fund after Green and Price are paid. Therefore, Price's claim is to be considered in rivalry to the attachments which were laid after his equity had been acquired.

Granting to the subsequent attaching creditors the

status of holders of legal titles, we then have the case of an assertion of an equitable title in opposition to later legal ones. Conflict between an equitable title and a subsequent legal one is a subject which falls within the equitable doctrine of priorities. 2 *Pomeroy, Equity Jurisprudence*, (4th *Ed.*), § 681. A prior equitable interest prevails over a later legal one, unless the latter can borrow a superior status from the absence of notice of the existence of the former, accompanied with the element of a valuable consideration or in lieu thereof perhaps with some other equitable incident. That is the general rule. In other words, the question in such cases is whether the holder of the posterior legal interest is in the position of a *bona fide* purchaser for value without notice of the prior adverse equitable right.

That the subsequent attaching creditors were not affected with notice of Price's interest, is not questioned. But can they say that they have paid a valuable consideration? I think not. An antecedent debt, as it is not cotemporaneous with the giving or taking of the security, is not such a consideration as will sustain the character of a *bona fide* purchaser for value. *Ferris v. Chic-Mint Gum Co.*, 14 *Del. Ch.* 232, 124 *A.* 577. The later attaching creditors parted with nothing on the faith of their attachments. The debt they attached was subject to the equity of Price's assignment. Ignorance of the assignment did not lead them to prejudice themselves. Price's claim is therefore superior to the claims of the creditors whose attachments are inferior in point of time.

3. There are, as before noted, three attachments which ante-date the assignment to Price. One of these was laid by Swift & Company on the agent of the insurance company in Chicago, Illinois, on April 16, 1931, about two months after the fire which occasioned the loss for which the insurance company was eventually found liable, and a year and eight months before judgment was rendered against the company in this State. Swift & Company sued

Simon in the Municipal Court in Chicago, Illinois. The suit was one in foreign attachment, and the insurance company was summoned as garnishee. Whether the situs of the debt which the insurance company owed to Simon was in Delaware and for that reason beyond the reach of an attachment in Illinois, need not be inquired into. See on the point *National Bank v. Furtick*, 2 *Marv.* 35, 51 *et seq.*, 42 *A.* 479, 44 *L. R. A.* 115, 69 *Am. St. Rep.* 99.

All that the record in this cause shows is that the insurance company was summoned as garnishee in Chicago. What occurred in the Chicago suit thereafter, as it relates to the garnishee, is not shown. What procedure is necessary under the Illinois law to be taken in order to mature the initial process of attachment into a ripened lien, I do not know. The Illinois statute has not been introduced in evidence. The copy of the record of the Municipal Court of Chicago fails to show any judgment against the garnishee, the complainant here. Nothing can be presumed with respect to the provisions of a foreign statute. It must be pleaded, *Thomas v. Grand Trunk Ry.*, 1 *Penne.* 593, 42 *A.* 987; *Wolf v. Keagy*, 3 *W. W. Harr.* (33 *Del.*) 362, 136 *A.* 520, and of course put in evidence at the trial. No further proceedings having been taken against the garnishee in the Municipal Court of Chicago after service of the summons, it would seem that the garnishment proceedings were abandoned.

Of course if the proceedings against the garnishee were not duly prosecuted to judgment against it, they amounted to nothing. It is suggested by the solicitor for Swift & Company that the injunction issued by this court prevented that company from proceeding with its garnishment. When it is remembered that the Chicago suit was instituted and the garnishee therein summoned as long as one year and eight months before the injunction was issued, this suggestion loses all appearance of merit, unless the Chicago proceedings were kept alive under the practice and

procedure of the Municipal Court. The record of that court which is in evidence shows no continuances, and whether continuances were automatic by force of statute or rules is not shown. The record is insufficient to allow anything to be safely asserted with respect to the Chicago attachment.

There are two other attachments which antedate Price's assignment. Executions were issued on two judgments obtained against Simon before a justice of the peace in Wilmington, Delaware, the judgment creditors being Morris Shanis and Charles Y. Fox, et al., respectively. The executions contained attachment clauses by virtue of which the complainant herein was summoned as the garnishee of Simon. This was in December of 1931. It appears that when the execution attachments were served upon the complainant as garnishee, letters dated December 9, 1931, and December 14, 1931, were addressed to the justice of the peace by the attorney for the garnishee saying that his client had not admitted liability to Simon for any loss under the policies of insurance and probably would not do so. With the receipt of the letters the proceedings against the complainant under the garnishment process appear to have stopped. So far as the record shows, nothing more was done. If an attachment clause be added to a *fi. fa.* on a judgment before a justice of the peace, judgment cannot be taken against the garnishee nor his answer taken on a day prior to the day for his appearance, nor on a day subsequent thereto unless by adjournment or postponement for that purpose. *Shannon v. Allen, 4 Har.* 326. No judgment was ever taken against the complainant as Simon's garnishee. The complainant as garnishee has never been forced to answer, and no adjournment of the attachment proceedings against it was ever entered.

It is argued in behalf of Shanis and Fox that the injunction of this court prevented them from proceeding further with their attachments. This argument presupposes

that the garnishment proceedings against the insurance company, which in a material sense were suits against it (16 *C. J., p.* 17, *et seq.,* § 3, and cases cited), were kept alive by orderly adjournments down to the issuance of the injunction. The statement of the Superior Court in *Shannon v. Allen, supra,* that such proceedings before a justice of the peace cannot eventuate in judgment after the appearance day except there be regular adjournments, is not, as contended by the solicitor for Shanis, inapplicable at present because of any difference in language between the statutory law now existing as compared with the statutory law prevailing when that decision was rendered. The statute then, so far as the present point is concerned, is not materially different from what it is now. As proceedings in garnishment are in effect a suit against the garnishee, it is reasonable, as the Superior Court held in the cited case, that its progress should be subject to the ordinary rules and principles applicable to suits generally, except of course in so far as the statute has effected modifications. The proceedings in garnishment were before a justice of the peace. They were never duly continued. The copy of the record of the justice of the peace filed in this cause does not show a continuance. The solicitor for Shanis says that he can prove that upon receipt of the letters from the attorney for the insurance company in December, 1931, the justice of the peace continued the proceedings until the question of the garnishee's liability was adjusted. Granting but not deciding that the record of the justice of the peace can be supplemented by proof *aliunde* to the effect suggested, the record as supplemented would be in no better plight. The record of a justice of the peace should show regular adjournments. *Redden v. Stewart,* 1 *Harr.* 495. The justice cannot adjourn a cause indefinitely, but only to a day certain. *Barr v. Chaytor,* 3 *Harr.* 492; *Jaques v. Rice,* 1 *Harr.* 33.

From the foregoing it appears that long before this

bill was filed, the attachments issued on the two judgments before the justice of the peace were in legal effect abandoned.

4. There are six other attachments, all post-dating Price's assignment. The earliest in point of time is that of Industrial Trust Company, issued out the Superior Court of this State, New Castle County. Inasmuch as the judgment upon which that attachment issued is in excess of the balance remaining after Green and Price are paid, it becomes necessary to say nothing of the five succeeding attachments if the one of the Industrial Company is good. The trust company's attachment was issued on the same day that Simon recovered his judgment against the insurance company. The filing of the bill in this case and the issuance of a restraining order enjoining the trust company from prosecuting its suit against the complainant as Simon's garnishee, prevented the trust company from proceeding to press for judgment against the complainant and drew the question of its rights before this court. Nothing is shown which would defeat the right of the trust company to secure judgment against the complainant as Simon's garnishee in the Superior Court. Having been enjoined by this court from proceeding in that one, the trust company's rights should be as effectually preserved here as they would be had it been allowed to proceed there. *Sanders v. Armour Fertilizer Works*, 54 *U. S. Sup. Ct. Rep.* 677, 78 *L. Ed.* 807, 91 *A. L. R.* 950, decided April 30, 1934. The balance of the fund after Green and Price have been paid will be decreed to the Industrial Trust Company.

Decree in accordance with the foregoing.