The opinion of the court was delivered by
Nicholls, C. J.
Mrs. Myra Clark Caines died in the city of New Orleans on the 9th of January, 1885.
On the 12th of January of the same year Mrs. Marie P. Evans presented for probate to the Civil District Court for the parish of Orleans what purported to be an olographic will of the deceased, dated New Orleans, January 8, 1885.
On the same day, what also purported to be a will of the deceased in the nuncupative form, under private signature, dated New Orleans, January 5, 1885, was presented for probate to the same court by W. H. Wilder and J. Y. Christmas, who were therein named as executors. They resisted the probate of the will of January 8, on the ground that it was a forgery.
*1241 The probate of the will of January 5 was resisted by Mrs. Evans, •on the ground that it had been superseded by a will subsequent in date and was defective in form.
These issues were presented and tried, resulting in a judgment, rendered February 21, 1885, which decreed that the instrument purporting to be an olographic will of Mrs. Gaines, dated January 8, 1885, was fraudulent and forged, and not entitled to probate, and that the nuncupative will of January 5,. 1885, was defective-in form, and therefore not entitled to probate, reserving however the right of the executors to propound the same for probate at Washington, D. 0., the domicil of the deceased.
On an appeal to this court, taken by Mrs. Evans, from that part of the judgment which declared the alleged will of January 8 to be a •forgery, the judgment of the District Court was affirmed.
No appeal was taken from the judgment refusing to probate the will of January 5, 1885.
The judgment having become final, the District Court appointed Mrs. Mattie L. Whitney tutrix of her minor children, who were grandchildren of the deceased, and appointed James Y. Christmas tutor of his minor children, they being grandchildren of Mrs. Gaines, and they in their said capacities administered the succession in Louisiana.
Subsequently James Y. Christmas died, and after a contest upon the administratorship the court appointed William Wallace Whitney, who had became of age, administrator of the succession in this State.
Subsequently to the refusal of the District Court to probate, as has been stated, the nuncupative will of January 5, it was taken to the .Surrogate’s Court for the county of Kings, in the city of Brooklyn, State of New York, and there offered for probate by W. H. Wilder, the surviving executor named in the will.
The probate was there opposed by Mrs. Marie P. Evans, who set up the forged will of January 8,1885. This'latter instrument was again rejected, and the nuncupative will of January 5,1885, was by a judgment rendered June 29, 1891, decreed to have been properly executed, conformably to the statutes of New York, to be genuine and valid, and to be the last will and testament of Myra Clark Gaines.
It was further decreed that at the time of the execution of said instrument Mrs. Gaines was in all respects competent to make the same, and was not under any restraint or undue influence.
*1242 The judgment further declared that William W. Whitney, Myra O. Whitney, Zulime Whitney, William W. Christmas, Rhoda B. Kennedy, James M. Christmas, all heirs and next of kin of Mrs. Gaines, had been made parties to and had made appearance in the proceeding — the minor, Zulime Whitney, appearing through her special guardian, William H. Ford.
An appeal, devolutive in character, and which is still pending in New York, was taken from this judgment by William W. Christmas and Rhoda B. Kennedy.
On the 4th August, 1892, the surrogate, declaring that a delay had been necessarily produced in granting letters testamentary or letters of administration on the estate of Mrs. Gaines, and that at the time of her death she was a resident of the county of Kings, by reason whereof the ordering and granting administration of all and singular the personal property, goods, chattels and credits whereof she died possessed appertained to his court, appointed William B. Davenport, public administrator in Kings county, temporary administrator of all the said personal property, goods, chattels and credits.
On the 11th December, 1892, William B. Davenport, as public administrator in Kings county, Brooklyn, New York, and temporary administrator of the personal property, goods, chattels and credits of Mrs. Myra Clark Gaines, filed a petition in the District Court for the parish of Orleans, to which he annexed a certified copy of the proceedings had before the surrogate in the matter of the probate of the will of Mrs. Gaines, and in which petition he alleged his appointment as above stated, and annexing copies of his letters of appointment he averred that, under the laws of New York, his powers under said appointment were the same as that of executor with seizin under the laws of Louisiana. He further alleged that Mrs. Gaines was at the time of her death and had for many years prior thereto been domiciled in said Kings county.
He prayed that the certified copy of the will be registered and ordered to be executed by the court.
Opposition to this demand was filed by Hattie L. Whitney, William W. Whitney, Zulime Whitney (now wife of--Somers), William W. Christmas, James M. Christmas and Rhoda B. Kennedy, wife of Charles A. Kennedy (the said opponents declaring themselves to be the sole heirs at law of Mrs. Gaines), and William W. Whitney, declaring himself to be and as appearing as administrator of the sue- *1243 cession of Mrs. Gaines, now under administration in the Civil District Court.
The grounds of this opposition were—
“ 1. Because William H. Wilder had on the 12th of January, 1885, propounded said alleged will to the Oivil District Court for the parish of Orleans, and prayed that the same be probated, and after due proceedings had and evidence adduced in support thereof, it was finally ordered, adjudged and decreed that said alleged will was not a valid will, and to it probate was refused, and it was further adjudged and decreed that said Myra Clark Gaines was at the time of the execution of said alleged will domiciled in the District of Columbia, and the right of proponent to apply to the proper court in said district for the probate of said will was reserved, all of which will more fully appear by the proceedings and judgment therein rendered the 27th day of February, 1885, and which judgment has not been appealed from, annulled or vacated, and remains in full force and effect.
“ 2. Because said Myra Clark Gaines did not die in the State of New York, was not domiciled therein, nor was a resident thereof at the time of her death, and had no property in said State, and said Surrogate’s Court of Kings county in said State was without jurisdiction to admit said alleged will to probate.
“ 3. Because the records of the proceedings in said Surrogate’s Court, upon the petition of said Wilder for the probate of said will, show that the decree admitting said will to probate has been appealed from, which appeal is still pending, and said decree is not a final one, which authorizes this court to order the registry and execution of said will.
“ 4. Because a will made in Louisiana and rejected by its courts can have no effect in Louisiana, although it may be admitted to probate elsewhere.”
After the opposition had been filed Edmund P. Gaines, of New York, Myra Clark Gaines Mazerat, John W. Harmon, of Mississippi, and George W. Benson, of Georgia, all legatees under the will sought to he probated, intervened in the proceedings, praying that the balance of the funds in the hands of William Wallace Whitney, administrator, after the payment of the debts, judgments, legal charges, and such claims as are now in process of adjustment in the courts sitting in Louisiana, be ordered paid over to William B. *1244 Davenport, temporary administrator of the estate of Myra Olark Gaines, in Kings county, New York.
The district judge on trial of the opposition sustained the same and refused the application of William B. Davenport, the temporary administrator, and rejected the will.
William B. Davenport has appealed, as have the intervenors, from the judgment.
The District Oourt considered that the will of Myra Olark Gaines dated January 5, 1885, having been made in Louisiana is governed iby the laws of Louisiana, and, having been already decreed invalid by that court because not made in the form prescribed by that law, it could not be taken to New York, the last domicil of the testator, probated there, and, having been received and made valid in New York by the laws of New York, brought back here for recognition and execution by it on property situated in this State and in possession of an officer of that court.
The district judge, in his opinion, says: “ The will was probated in New York because the city of Brooklyn, in the county of Kings, State of New York, was considered the last domicil of the deceased. It is proved in this case to be so by her own judicial admissions made in the courts of this State and in the Federal courts years prior and a few months before her death, and since her death conceded to be her domicil by her heirs and those administering her succession.
“The reservation in the judgment to propound the will at Washington, D. 0., the domicil of the deceased, is mere obiter dictum, as the place of the domicil was not at issue in that proceeding. It is simply a reservation to propound the will for probate at the last domicil of the deceased, wheresoever that might be.”
He further says:
“ This court has already determined that the will was not made in the form prescribed by our laws, and therefore under Art. 1595 was null and void. The fact that the deceased resided out of this State did not empower her to dispose of her property in this State in a manner different from that prescribed by the laws of this State. Art. 491' of the Oivil Oode declares that persons who reside out of the State can not dispose of the property they possess here in a manner different from that prescribed by its laws.”
“It is immaterial whether Myra Olark Gaines’ domicil was here or in New York. Her will is governed by the laws of Louisiana, the *1245 law of the place where it was made, not by the law of the domicil. It having been made in Louisiana no other law can be resorted to for the purpose of determining its validity as to form or effect so far as its operation on property in this State is concerned.”
“ The domicil of a testator as to the form and effect of a will is ignored by our law. It is the place where it is made and the property disposed of where situated that is recognized. * * * The decree of the Surrogate’s Court of Kings county, New York, merely declares that the will is a valid will in New York. It does not decree that it is valid everywhere. It is valid there, and whether admitted to probate here or not the action of this court can not alter its effect upon property there.”
In discussing the legal propositions submitted to us in this case, we hold as established beyond question as a fact, that at the time of the making of the will of January 5, 1885, and at the time of.her death, Mrs. Myra Clark Games’ domicil was in the city of Brooklyn, New York State, and that she was only temporarily in New Orleans at that time.
The first ground of opposition submitted by the appellees was, as we have seen, that the District Court for the parish of Orleans had,, on the 27th February, 1885, on the application of W. H. Wilder and James Y. Christmas to probate the will of the 5th of January, in which they were named executors, refused to do so and reserved their right to propound the same for probate at the city of Washington as the place of her domicil, and that this decree never having been appealed from, annulled or vacated, remained still in full force and effect.
The record does not show whether this particular contention, which is substantially a plea of res judicata,was interposed or not as an objection in the Surrogate’s Court. Whether it was so interposed or whether made for the first time in the last proceedings in Louisiana, it was in neither event well taken. The only question before the Civil District Court in 1885 was whether that court should, as a matter of original probate, probate the will, and that question was determined adversely to the probate solely because it did not conform as to form with the requirements of che laws of this State. Neither the correctness nor the force and effect of that judgment on the issue as so presented are contested nor will that judgment be affected ■ by a decree rendered in the present proceeding. It can stand per *1246 fectly consistently with the granting of the application we are now considering.
As regards the domicil of the testator that question was not an issue in the former proceeding, and the mention of her domicil (made in that portion of the decree reserving the executor the right to propound the will for probate elsewhere) as being in the city of Washington was uncalled for, bound no one, and was entirely surplusage.
The second objection was to the probate of the will by the surrogate on the ground of a want of jurisdiction in the Surrogate Oourt. This want of jurisdiction, which seems to have been once urged and then formally withdrawn in that court, is based upon the claim that Mrs. Gaines did not die in the State of New York, was not domiciled nor a resident thereof at the time of her death, and had no property in that State. We concur in opinion with the surrogate and the district judge that Mrs. Gaines’ domicil was in Kings county, New York, at the time of her death.
Her succession was instantly opened by the fact of her death at the place of her domicil. That result was totally independent of her having property at that time in the county of Kings, or in the State of New York. Whether when she died her succession was, as to its character, a legal or a testamentary one, was a question necessarily to be determined at the place of legal opening. When the succession opened it opened as a single and entire succession. The unity of the succession was not destroyed by the face that portions of the property might be located in different jurisdictions and in different States, and because from motives of public policy or the operation of local laws the property so situated might be withdrawn partially or entirely from the control of the laws of the State of the domicil, or subjected for the same reasons to special restrictions.
The language of this court in Burbank vs. Payne & Harrison, IV An. 15, that when a person dies leaving property in two or more countries his property in each State is considered as a separate succession for the purpose of administration, the payment of debts and the decision of the claims of parties asserting title thereto was never intended to convey the idea that the fictitious being or entity known as the “succession” was, from a legal standpoint, other than single and indivisible. The court was dealing, not with the succession itself, but with the effect of the laws of *1247 Louisiana upon property of that succession which chanced to be within the limits of this State.
The domicil of the deceased person being the place of the opening of the home or mother succession — the succession proper — the court of that domicil is unquestionably authorized to have presented to it an instrument purporting to be the last will and testament of the deceased, and after due proceeding and inquiry had, to determine whether it be such last will under the laws of the place of the domicil. In the matter before us the surrogate, in a proceeding to which the surviving executor and the legal heirs and next of kin of Mrs. Gaines were parties, had propounded before his court for probate the will of the 5th January, 1885, and, after hearing, pronounced it the last will and testament of Mrs. Gaines, probated it and ordered its execution. He did so in the clear exercise of his jurisdiction.
If a decree in Louisiana, could under any circumstances, have controlled the surrogate in his action, the particular decree relied on certainly did not do so, for it recognizes the right (if any such recognition were necessary) to a future probate at the .testator’s domicil, and did not attempt to close the door to subsequent action elsewhere. It expressly reserved that right.
The third objection was that the probate decree in New York could not be legally registered and acted upon here, for the reason that it was not a final decree, an appeal having been taken from the same. The appeal taken was not suspensive, and the evidence establishes that the effect of the decree as such was not interfered with by the appeal.
The fourth ground of opposition assigned, and which was sustained by the District Oourt, was “ that a will made in Louisiana and rejected by its courts could have no effect in Louisiana, although it may be admitted to probate elsewhere.”
In maintaining this ground of opposition, refusing the application and rejecting the will, we are of the opinion the judge erred.
His error was occasioned by taking into consideration for the purpose of reaching his conclusions, some subjects which were outside of and foreign to the restricted issue submitted to him.
The question before him was not whether the instrument purporting to be Mrs. Gaines’ will should be probated here as a matter of original probate. That had been once attempted in his court and failed, the court however properly recognizing the right of the *1248 parties in interest to propound it later for probate at the domicil. The parties in interest acted upon that suggestion. When the case-went a second time before the lower court, matters had advanced very greatly beyond the point where the first judgment left them.. When brought a second time before the Oivil District Court, the case-was presented under entirely different conditions from those which had existed before, the object of the demand being also essentially different. In the case at bar the court was not called on to deal directly with and on the instrument as a matter still in pais for the-purpose of determining whether it was really the last will and testament of the deceased. That ¡question had passed on to and been determined by a court competent and authorized to do so, and it was-merged in the judgment of that court.
What the court was asked to do was to- recognize and give effect, to the judgment itself, and as resulting from that judgment to recognize and give effect to the adjudication made on it that a particular-instrument, identified with and by the judgment, was really the last, will and testament of Mrs. Gaines, made and executed according to-the laws of the State in which she had her domicil at the time of its making and the time of her death.
What the application had in view was, not to obtain a decree giving effect to the various provisions of the will, and passing upon and-fixing the rights of parties under the will, but a decree which would recognize the instrument to be Mrs. Gaines’ will and give effect to it to the extent necessary to make it the basis of claims predicated upon it as such.
We are of the opinion that the court erred in giving to the application an intended scope greater than this, and in deciding at this stage of the proceeding, the will and its provisions to be inoperative in this State.
That issue did not legitimately arise on the application before us- and should be'left at large for the future. If there be any parties in this State, creditors or others, who have the legal right to contest the provisions of the will, those rights would have remained unaffected by simply recognizing as a fact what is unquestionably the-fact, that the instrument in question was the will of the deceased. Whether it will be operative or not in Louisiana is a different matter.
An ancillary administration of the succession of Mrs. Gaines has been opened in this State and an administrator has been appointed. *1249 Before property in Ms hands can be taken from him, proceedings contradictorily with him will have to be taken. That proceeding will furnish ample opportunities to all parties who may have interests injuriously and illegally affected by the will to protect them.
It by no means follows that because the instrument in question discloses uncontrovertibly the last wishes and desires of the deceased, and because we so recognize, that therefore those wishes and desires are to prevail if they come in conflict with the will of the people of this State as evidenced by statutes and decrees of the courts, but the existence of such illegal provisions must be shown in proper proceedings contradictorily with proper parties. The rights of persons claiming under the will can not be summarily disposed of by rejecting the present application. We are of the opinion that when the surrogate of Kings county rendered a decree in proceedings contradictorily taken between W. H. Wilder, as executor of the will, and the legal heirs and next of kin of Mrs. Gaines, holding that the instrument dated January 5, 1885, and purporting to be the last will and testament, was truly and legally such, that particular fact must be taken in this State as fixed by the judgment and given effect to in Louisiana as established.
This result of the judgment is not affected by the fact that the application in this case was made by the temporary administrator instead of the executor. The temporary administrator is legally acting in lieu of the executor.
The intervention of E. P. Gaines and others in the proceedings has no influence upon that question.
For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the instrument dated New Orleans, January 5, 1885, purporting to be the last will and testament of Myra Olark Gaines, and probated as such by the Surrogate’s Court for the county of Kings, in the State of New York, on the 24th day of' June, 1891, be and it is hereby recognized as the last will and testament of Myra Olark Gaines. Costs to be paid by appellees.
Mr. Justice Parlange takes no part.