IN RE MAULDIN'S ESTATE. MAPES, APPELLANT, *v.* MAULDIN, RESPONDENT.

(No. 5,302.)

(Submitted November 10, 1923. Decided November 28, 1923.)

[220 Pac. 1102.]

*Wills—Domestic Will—What Constitutes—Probate.*

Wills—Will Made by Resident of Montana in Another State—Probate.
  1. A will made in another state by a resident of Montana is subject to probate under section 10018, Revised Codes of 1921, relating to domestic wills, though proved and allowed in the foreign state, and not under sections 10039–10041, providing the manner in which a foreign will upon the production of a duly authenticated copy thereof and its probate in another state may be admitted to probate in this state.

[69 Mont. 132.]

Same—Domestic Will—Probate in Another State—Effect on Jurisdiction of State Court.
2.  It is the policy of the state to retain original jurisdiction of the probate of the wills of its residents, and it is not required, under the full faith and credit clause of the Constitution, to permit such a will to be probated first in another state and then grant ancillary administration on the foreign record.

*Appeal from District Court, Lewis and Clark County; Wm. H. Poorman, Judge.*

IN THE MATTER of the estate of James Mauldin, deceased. Petition for admission to probate of an alleged will of decedent. From judgment denying probate, petitioner, T. A. Mapes, appeals. Affirmed.

*Messrs. Day & Mapes,* for Appellant, submitted a brief; *Mr. E. C. Day* argued the cause orally.

*Mr. William T. Pigott,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

On January 3, 1923, T. A. Mapes, a resident of Helena, filed his petition in the district court of Lewis and Clark county, praying for the admission to probate of an alleged will which he averred had been executed by James Mauldin on February 19, 1922, and the appointment of himself as administrator with the will annexed. The petition states that Mauldin died at Los Angeles on February 28, 1922; that he was a resident of the state of Maryland at the time of his death and left both real and personal estate in Montana, some of which was located in Lewis and Clark county.    It is further alleged that the will had been proved and allowed in the orphan's court of Cecil county, Maryland, and a duly authenticated copy of the same and its probate were filed with the petition.

2.  Ancillary probate at testator's domicile after probate in other jurisdiction, see notes in 7 Ann. Cas. 313; 1 L. R. A. (n. s.) 996.
Full faith and credit provision as applying to decree of another state, admitting a will to probate, see note in 13 A. L. R. 498.

[69 Mont. 132.]

The names of the beneficiaries under the will were also set out, amongst them being Hugh Mauldin, of Sacramento, California, a nephew of the deceased. With the petition there was presented a request in writing signed by the executor of the will named in the Maryland proceedings, who was also a nephew of the deceased and a resident of Maryland, asking that the petitioner be appointed as administrator with the will annexed of said estate in Montana.

Upon the filing of the petition the court made an order setting the same down for hearing. In due time the above-named Hugh Mauldin appeared and filed his objections to and protest against the granting of the petition on the ground, amongst others, that the deceased James Mauldin at the time of his death was a resident of Dillon, Beaverhead county, Montana, and not of Cecil county, Maryland.

The matter came on regularly for hearing before the court without a jury on January 15, 1923. After the conclusion of the testimony the court found as a fact that James Mauldin was a resident of, and domiciled in, Dillon, Beaverhead county, Montana, and not of Cecil county, Maryland, at the time of his death, and that the document purporting to be the will of the decedent is, if it be a will, a domestic will entitled to probate originally in the court of this state; whereupon a judgment was entered denying the petitioner's application and dismissing the proceedings. From this judgment the petitioner has appealed.

Pending the appeal in this court the protestant and respondent, Hugh Mauldin, died, and on motion of counsel his widow, Eva Gaylord Mauldin, otherwise called Eva G. Mauldin, to whom all his interest had passed by will, was substituted in his place. The case, as argued by counsel on the appeal, presents two questions for determination, the first of which is: Was the deceased, James Mauldin, at the time of his death a resident of Maryland, or a resident of Montana? We have examined the testimony produced at the hearing upon this matter from every suggested angle. No useful purpose would

be served by setting it out in detail. It preponderates so greatly in favor of the court's finding as to warrant the statement that Mauldin's residence in Montana, both at the time he is alleged to have executed the purported will, and at the time of his death, was established beyond a reasonable doubt.

The second controlling question in this case may be stated [1] thus: Can the will of one who was a resident of Montana at the time of his death be proved and admitted to probate in the courts of this state in the manner provided in sections 10039, 10040 and 10041, Revised Codes of 1921?

Chapter 23, Part IV, of the Code of Civil Procedure of 1921 is entitled "Probate of Foreign Wills," and embraces three sections, namely, 10039, 10040 and 10041. Sections 10039 and 10040 are as follows:

"10039. All wills duly proved and allowed in any other of the United States, or in any foreign country or state, may be allowed and recorded in the district court of any county in which the testator shall have left any estate.

"10040. When a copy of the will and probate thereof, duly authenticated, shall be produced by the executor, or by any other person interested in the will, with a petition for letters, the same must be filed, and the court or judge must appoint a time for the hearing, notice whereof must be given as hereinbefore provided for an original petition for the probate of a will."

Section 10041 provides proceedings on the hearing to be held as provided in section 10040.

Section 10018, Revised Codes of 1921, so far as necessary to be quoted here, provides that "Wills must be proved, and letters testamentary or of administration granted: (1) In the county in which the decedent was a resident at the time of his death, in whatever place he may have died." The remaining portion of this section, as well as section 10019, have reference to the place of probate of the will of a decedent who was not a resident of this state at the time of his death.

Counsel for appellant contend that the provisions of these two sections relate only to the jurisdiction of district courts as between each other, that the procedure prescribed for the probate of wills originally presented for probate in the courts of this state is embraced in sections 10020 to 10031, and that section 10039 is an express declaration governing *all* wills (both of residents and of nonresidents) admitted to probate outside this state, and that inasmuch as it relates to a specific class of wills, it modifies and limits the provisions of all the preceding sections, both as to venue and procedure, and is not restricted in its application to the wills of those who were non-residents of the state at the time of death.

The meaning of sections 10039–10041, *supra*, is not difficult to determine when we consider them in connection with their history. So far as we have been able to ascertain, there was no statutory provision permitting a foreign will to be admitted to probate in this jurisdiction upon the presentation of an authenticated copy of its probate in another state or country, prior to the year 1872.

In the Codified Statutes of 1871–72, page 554, appears an Act of the territorial legislature entitled "An Act concerning last wills and testaments," declaring, amongst other things, who was competent to make a will, prescribing the method of execution, defining the different kinds of wills, pointing out the procedure for proving the same, *etc.* Sections 18 to 21, inclusive, of this Act are substantially the same as sections 10039–10041, *supra*, except that section 21 thereof declares that the letters granted on such foreign record "shall extend to all the estate of the testator in this territory," and "Such estate, after paying its just debts and expenses of administration, shall be disposed of according to such will so far as such will may operate upon it and the residue shall be disposed of as is provided by law in cases of estate in this territory belonging to persons who are inhabitants of any other state or territory or country."

[69 Mont. 132.]

The statutes of Vermont relative to the allowance in that state of the probate of a will from a foreign state were similar to sections 18 to 21 above, section 2369 of the Vermont statute being identical with section 21. In *Tarbell* v. *Walton*, 71 Vt. 406, 45 Atl. 748, the court had occasion to construe this section 2369, and in doing so said: "Now, if the provision for allowing wills on foreign probate was intended to apply to the will of a testator domiciled here, proved abroad for ancillary purposes, it is impossible to suppose that such a provision for the disposition of the residue would have been inserted, for it would be strange to say that in such a case the residue of the estate of the testator shall be disposed of as though he was not a resident, but an inhabitant of another state or country. It is manifest, therefore, from the statute itself, that the provision in question was not intended to apply to a foreign probate of the will of a domiciled testator, but only to such probate of the will of a testator domiciled in some other state or country who leaves property here on which his will can operate; in which case it can be allowed here under this provision, and ancillary administration obtained."

It thus seems plain that, as first enacted, these sections had application only to foreign wills.

In 1877 the legislative assembly passed "An Act relating to probate courts and estates of deceased persons," (Sess. Laws [Tenth Session], p. 239), which was a codification of the former laws relative to wills and probate procedure. Article III of this Act is entitled "Probate of Foreign Wills," being sections 27, 28 and 29 thereof, and embraces sections 18 to 21 of the Act of 1872, except that the new Act reduced the number of sections dealing with the admission to probate of foreign wills from four to three. To effect the reduction and to make an orderly arrangement of subjects, the substance of that part of section 21 of the former Act which is quoted above, together with additions calculated to render it easily workable, were transferred to section 291 of the new Act, and so much of the residue of section 21 as directed the issuance of letters

was incorporated into the new section 29. Section 291 above referred to has been carried through the various revisions of our Codes, and now appears as section 10329, Revised Codes of 1921.

This Article III was carried forward into the Revised Statutes of 1879 (p. 197) as sections 27, 28 and 29 of Article III of the Probate Practice Act under the heading "Probate of Foreign Wills."

In the Compiled Statutes of 1887 (p. 281), sections 27, 28 and 29 of Article III of the Revised Statutes of 1879 appear as sections 27, 28 and 29 in the Chapter on probate of wills, but without the heading "Probate of Foreign Wills."

In the Annotated Codes of 1895 these same sections appear as Article III of the probate proceedings under the heading "Probate of Foreign Wills" (secs. 2350–2352, Code Civ. Proc. 1895), and in the Revised Codes of 1907 (secs. 7404–7406) they again appear under a like Article and heading.

When it is considered that upon the first appearance of these provisions in the laws of this jurisdiction they were made applicable to foreign wills alone, and that during the last forty-four years the legislatures of the territory and state have on four different occasions, beginning with 1879 and ending in 1921, re-enacted them under Chapter or Title headings entitled "Probate of Foreign Wills," it seems it would be a misinterpretation to hold that they have reference to other than foreign wills. .

The matters presented on this appeal were not involved in *State ex rel. Ruef* v. *District Court,* 34 Mont. 96, 115 Am. St. Rep. 510, 9 Ann. Cas. 418, 6 L. R. A. (n. s.) 617, 95 Pac. 866, but the decision in that case is in harmony with the above conclusion.

The supreme court of California construed Code provisions of that state identical with sections 10039–10041, *supra* (*In re Clark's Estate,* 148 Cal. 108, 113 Am. St. Rep. 197, 7 Ann. Cas. 306, 1 L. R. A. (n. s.) 996, 82 Pac. 760, and held that they only applied to foreign wills. In the course of the

opinion it was pointed out that to arrive at a different con-
clusion would obliterate all distinction between the probate of
foreign and domestic wills, would result in a surrender of the
state's original jurisdiction in these matters, and place that
state in an anomalous class by itself. "For neither the laws
of Great Britain nor of any sister state of the United States
ever have permitted, and we venture to say ever will permit,
any such doctrine, and it may be safely added that no civilized
country in the world has ever entertained it."

Nor does the duty of a state to give full faith and credit to
[2] the judgments of other states require it to permit the
will of one of its residents to be probated first in another
state, and then grant ancillary administration within this state
on the foreign record. (28 R. C. L. 365.)

As intimated by the California court in the above quota-
tion, it is the policy of all states to retain original jurisdiction
of the probate of the wills of its residents. This doctrine is
sustained by the decisions of every court to which counsel have
called attention, among them being: *In re Longshore's Will,*
188 Iowa, 743, 176 N. W. 902; *Wallace* v. *Wallace,* 3 N. J. Eq.
616; *Tarbell* v. *Walton, supra; In re Clark's Estate, supra;*
*Stark* v. *Parker,* 56 N. H. 481; *Morris* v. *Morris,* 27 Miss. 847;
*Bates* v. *Incisa,* 59 Miss. 513.

We conclude that the disposition of the appellant's petition
made by the district court was correct, and the judgment ap-
pealed from is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES
COOPER, HOLLOWAY and GALEN concur.