## STRATHMANN et al. v. KINKELAAR.

No. 11323—Opinion Filed Jan. 20, 1925.

**1. Domicile—Residence—Factum — Animus Manendi.**

Residence or domicile of choice is a question of the factum and the animus manendi. Both must concur in order that residence or domicile may be deemed established.

**2. Appeal and Error — Finding of Fact — Residence.**

The intention of a person as to the place

of his residence is a question of fact, to be determined by the verdict of the jury or the findings of the court. Such determination is conclusive upon appeal unless clearly against the weight of the evidence.

**3. Same — Finding — Weight of Evidence.**

Record examined, and held, that the finding of the district court that the testator, at the time of his death, was a resident of the state of Kansas, is clearly against the weight of the evidence.

**4. Wills — Jurisdiction — Foreign Probate —Residence.**

Testator died in another state, and his will was there probated. At the time of his death, such testator was a resident of the state of Oklahoma. On application for ancillary probate of such will in Oklahoma, held, such court of such other state had no jurisdiction to probate such will, and for that reason, the courts of Oklahoma had no jurisdiction to entertain proceedings for ancillary probate thereof.

**5. Same — County Court Jurisdiction—Ancillary Probate.**

Under the laws of this state the county court is not vested with jurisdiction to allow the ancillary probate of a domiciliary will based on a foreign probate.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

**Error from District Court, Woods County; T. P. Clay, Assigned Judge.**

Action by Theresia Kinkelaar in the District Court of Woods County, as contestee on appeal from the County Court of Woods County, for the ancillary probate of the last will of Henry Strathmann, deceased. From a judgment in her favor in said district court, plaintiffs in error, as contestants, appeal. Reversed.

L. T. Wilson and A. J. Stevens, for plaintiffs in error.

L. A. Madison, Carl Van Riper, and E. W. Snoddy, for defendant in error.

Opinion by ESTES, C. On October 3, 1916, F. B. Strathmann, one of the plaintiffs in error, filed petition in the county court of Woods county for the appointment of an administrator of the estate of Henry Strathmann, deceased, his brother. Thereafter, Theresia Kinkelaar, sister of deceased, filed petition in said court for ancillary probate of the alleged will of Henry Strathmann, deceased, exhibiting authenticated copy of said will and the proceedings in probate thereof in the county court of Ford county, Kan. The plaintiffs in error, two brothers and two sisters of deceased, and of Theresia Kink-

elaar, filed their contest against the ancillary probate of said will in Woods county, Okla. On a trial of the issues duly joined, said county court of Woods county entered judgment in favor of contestants. Thereupon defendant in error appealed to the district court of Woods county. That court rendered judgment admitting said will to probate in Woods county, and directed the carrying out of such judgment by said county court, from which judgment plaintiffs in error have appealed to this court.

Numerous errors are assigned. On careful consideration, it is found there is no merit in any of the alleged errors except that said county court and said district court had no jurisdiction to entertain the proceedings for ancillary probate of said will. Theresia Kinkelaar, defendant in error, contended that decedent, at the time of his death, was a resident of and domiciled in Ford county, Kan., and that therefore the county court of said county had jurisdiction to admit the alleged will of Henry Strathmann to probate as a domiciliary will. The plaintiffs in error contended that said deceased was not a resident of Ford county, Kan., at the time of his death, but was a resident of Woods county, Okla., at the time of his death, and that therefore said county court of Ford county, Kan., had no jurisdiction to probate his alleged last will; and that the will in controversy was a domiciliary will in Oklahoma, and that there is no statutory authority for the ancillary probate of a domiciliary will. Was Henry Strathmann, at the time of his death, a resident of Ford county, Kan., or a resident of Woods county, Okla.? The decision of this cause depends upon the answer to said question.

Section 1088, Comp. Stat. 1921, requires that wills must be probated in the county of which decedent was a resident at the time of his death, in whatever place he may have died. Section 1113, Id., provides, in substance, that when a copy of a will and the probate thereof, duly authenticated, shall be produced by the executor, or any person interested in the will, with a petition for letters, the court shall proceed in the same manner as provided for original petition for the probate of a will. The next section of said statutes provides, in substance, that if, on the hearing, it appears upon the face of the record that the will has been proved, allowed, and admitted to probate in any territory or state of the United States or the District of Columbia, or in a foreign country or state, according to the laws specified in said statute, it must be ad-

mitted to probate with the same force and effect as a will admitted to probate originally in this state. The formal proofs of the probate of the will in controversy in Ford county, Kan., were duly made in both the county and district courts of Woods county, Okla. The jurisdiction of the county court of Ford county, Kan., to probate said will is presumed until the contrary appears. The decree of that court admitting the will herein to probate is a judicial one. It stands on the same footing as the judgment of any other court of competent jurisdiction of a foreign state and is entitled to the same faith and credit under the Constitution of the United States. Any foreign judgment may be attacked in this state for want of jurisdiction in the court rendering the same. If Henry Strathmann, at the time of his death, was in fact a resident of Woods county, Okla., then the county court of Ford county, Kan., had no jurisdiction to render judgment admitting the will in controversy to probate. Said county court of Woods county, in effect, found that said Henry Strathmann, at the time of his death, was a resident of Woods county, Okla. Said district court, on appeal, found that said Henry was a resident of Ford county, Kan., at the time of his death. Unless said last finding is clearly against the weight of the evidence, the same cannot be disturbed by this court.

It is not attempted here to set out every detail of such evidence. The property of which said Henry died seized consisted of a farm of 160 acres in Woods county, and a limited amount of personal property. By the terms of said will, all of same was given to defendant in error, except $5 each to plaintiffs in error. Henry Strathmann had lived in Woods county about 20 years. He was never married. For many years he had lived alone on said farm. About three months prior to February 24, 1916, being in a helpless condition, suffering from dropsy, and unable to live alone on his farm, he had been taken to and cared for in the home of a neighbor, Mr. Dalton. About two days prior to said date, he suffered a stroke of paralysis, and on said date he made the will in controversy. About three days before the making of said will, defendant in error, Theresia Kinkelaar, a half-sister, and certain members of her family, who resided at Wright, in Ford county, Kan., had come to his bedside. Twelve days after said will was made, with the assistance of physicians, said Henry was placed on a stretcher and carried to the station, and, accompanied therefrom by members of contestee's family, to her home at Wright in Ford county, Kan. He died there about two months after

arriving and at the age of about 66 years.

1. "Domicile of choice is entirely a question of residence and intention, or, as it is usually put, of factum and animus. Both must concur in order that the domicile may be deemed established." 19 C. J. 401.

There is no question in the instant case as to the factum—Henry Strathmann was present and living in Ford county, Kan., when he died.

2. The intention of a person as to the place of his residence is a question of fact, to be determined by the verdict of the jury or the findings of the court. Such determination is conclusive upon appeal unless clearly against the weight of the evidence.

Cornelison v. Blackwelder, 38 Okla. 1, 131 Pac. 701.

3, 4. "The abandonment or change of domicile is a proceeding of a very serious nature, and an intention to make such a change requires proof by very satisfactory evidence." 19 C. J. 436.

"Where facts are complicated the presumption is strongly in favor of an original as against an acquired domicile, and a domestic rather than a foreign domicile." Id. 433.

By the same authority it is laid down that the question depends upon the facts of each particular case; that in case of uncertainty, it is necessary to inquire into the habits, character, domestic relations, business, and the like, involving the history of the person. The foregoing are applicable rules herein. Contestants set up mental incapacity and undue influence in the matter of making said will. Said county and district courts properly held that said questions were not involved in such ancillary proceedings. Said courts properly admitted the serious evidence on these matters as bearing upon the questions, whether said Henry voluntarily changed his residence to Kansas or was capable of exercising the intention so to do. The defendant in error, Theresia Kinkelaar, contestee, vouched for such mental capacity of said Henry. Without reference to her testimony and that of the members of her immediate family, and omitting for the time, the testimony of plaintiffs in error. contestants, we think the declarations of said Henry, about the time he was being removed from his home in Woods county, Okla., to Ford county, Kan., from the lips of witnesses we may assume to be less interested, are very weighty if not decisive. Mr. Guffey, who acted as nurse for said Henry in the home of Mr. Dalton, testified, in substance, that while he was serving supper to said Henry on the night he was taken from Woods county, that said Henry said that

when spring came he would get better and be able to get back home again; that said nurse assisted in taking said Henry to the train, and that only the clothing he had on and a few quilts, for wraps, were taken. Mr. Dalton, the neighbor in whose house said Henry was sick, testified that said Henry stated before he left for Kansas, that he was coming back to his home to live with Mr. Dalton. Mr. Jones, a neighbor of Mrs. Kinkelaar in Kansas, while calling on said Henry, asked him: "Do they give you enough to eat"? Said Henry replied: "Yes, they treat me pretty good, I am going to live up here." Mrs. Jones stated that in her first conversation with said Henry, she remarked to him, that under good care of the doctor and his sister, he might be able to get back to Oklahoma, and that he said that he would never go back there and that this would be his home. Dr. McCarty, who attended said Henry in said Ford county, Kan., just before he died, testified that said Henry said he had come there to live where he could be taken care of. Another neighbor, Mrs. Wood, testified: "Well, in regard to his health, when I remarked about health under the care of his sister he would be able to get back home, and he said, 'No, that he would never be able to go back'." Mr. Vigg, the attorney who prepared said will, testified that at the time of making the same in Woods county, Okla., that said Henry said he wanted to live with Mrs. Kinkelaar the rest of his life, that she had always taken care of him and was willing to take care of him, and that he intended to go to his sister's as soon as he got physically able. A Mrs. Smith, a neighbor in Woods county, Okla., testified that said Henry told her about having said stroke of paralysis at Dalton's, and being carried into the house, and that as soon as he was a little better he would go home with the Kinkelaars and stay with them; that there was nobody there (Woods county) to take care of him. Mrs. Smith told said Henry that that was the best thing he could do, and he replied that "Mama (meaning Mrs. Kinkelaar) was then taking care of him." This conversation took place after the will was made and before said Henry was taken to Kansas. Mr. Sternberger, another neighbor in Woods county, testified that said Henry told him that he was going home with the Kinkelaars. Of those who may be said to be interested witnesses, one contestant testified that when he visited his brother, said Henry, in the home of said sister, Mrs. Kinkelaar, in Kansas, the latter told him that said Henry wanted to go back to Oklahoma and that she said to him that he could not go back,

but must stay with her now. Another contestant testified that Mrs. Kinkelaar said that after Henry was in her home awhile he wanted to run off. These statements were denied by Mrs. Kinkelaar. The husband and two sons of Mrs. Kinkelaar testified that said Henry said he could not stay at the place where he had been staying (Woods county); that if he ever got well he intended to go back to Oklahoma, but he aimed to make his home with the Kinkelaars the rest of his life; that if Mrs. Kinkelaar would take care of him all his life, he would stay with her; that he had been living long enough by himself and batching and was not going to do that any more; that if he went to Kansas, he would be lots of bother and would have to have good care, and that Mrs. Kinkelaar told him he would have it; that he did not have any use for his property any more.

This old gentleman did not intend to change his legal residence to Ford county, Kan. Under the stress of his sickness and believing, as he must have believed, that his days were numbered, it is but natural that he should have desired to be with his sister thenceforth, rather than alone among those not related to him by consanguinity. Under all these circumstances, it was but natural that he should say that he was going to live with this said sister and make his home with her. In the hour of his extremity—with the shadows far fallen toward the East, he said he would make his home with said sister in order to enjoy that succor that could come most from those nearest to him. After such long and continuous residence in Oklahoma, did it occur to him to change his legal residence to Kansas to realize such longing? If he was compos mentis, and the matter of changing his residence from one state to another occurred to him at all, he knew that such change of residence was not necessary for such purpose. Inspired by the hope that springs eternal in us all, before leaving his home in Oklahoma, he declared to disinterested witnesses, when not in the presence of said sister or any member of her family, his intention to return when his strength should be renewed. We can readily see how any man, under such circumstances, might say he would make his home with said sister, who was at the time nursing and caring for him, intending to do so until he recovered, or unto death. His intention as to residence would probably not be different from that of a man who might permit himself to be taken to a hospital or to relatives in another state to die or until recovery.

After carefully weighing all the evidence in this voluminous record, bearing on said question of residence, it is held that the finding of the district court that said Henry Strathmann, at the time of his death, was a resident of Ford county, Kan., is clearly against the weight of the evidence.

5. Moreover, since said Henry Strathmann was a resident of Woods county, Okla., at the time of his death, the will in controversy, having been executed in said county, was a domiciliary will. Even if there was authority under the laws of Kansas for probate of same in that state, there could be no ancillary probate in Oklahoma, based thereon. There is no statutory authority in this state for the ancillary probate of a domiciliary will. Seifert v. Seifert, 82 Okla. 230, 200 Pac. 243.

The judgment of the district court herein should be and is reversed, and the said judgment of the county court of Woods county denying the ancillary probate of said will and dismissing the proceeding therefor, should be affirmed by said district court.

By the Court: It is so ordered.

Note.— See under (1) 19 C. J. 401; (2) 19 C. J. p. 442; (3) 19 C. J. p. 436; (4) 40 Cyc. p. 1245; (5) 40 Cyc, p. 1246.