RILEY ET AL., EXECUTORS, *v.* NEW YORK TRUST CO., ADMINISTRATOR, ET AL.

No. 81. Argued December 16, 1941.—Decided February 16, 1942.

*Mr. Dan MacDougald,* with whom *Messrs. James A. Branch, Robert S. Sams,* and *Aaron Finger* were on the brief, for petitioners.

344

*Mr. Marion Smith,* with whom *Messrs. Hiram C. Todd, Clarence A. Southerland, Daniel O. Hastings,* and *J. Richard Bowden* were on the brief, for respondent.

*Mr. Mortimer M. Kassell* for the State Tax Commission of New York, as *amicus curiae,* by special leave of Court.

MR. JUSTICE REED delivered the opinion of the Court.

Coca-Cola International Corporation, incorporated in Delaware, filed a bill of interpleader in a Delaware Court of Chancery against Julian Riley and Hughes Spalding, petitioners here, the Executors of Mrs. Julia M. Hungerford, with letters testamentary issued by the Court of Ordinary of Fulton County, Georgia, and against The New York Trust Company, the respondent, a New York corporation, as temporary administrator (afterward administrator c. t. a.) of the same decedent, appointed by the Surrogate's Court for New York County, New York.

The Georgia executors and the New York administrator each claim the right to have transferred to them, in their representative capacity, stock in the Coca-Cola Corporation now on its books in the name of the decedent. The outstanding certificates are in Georgia, in the hands of the Georgia executors. The parties are agreed, and it

is therefore assumed, that Delaware is the situs of the stock. In accordance with the prayer of the bill, the Delaware court directed the adversary claimants to interplead between themselves as to their respective claims.

The Georgia executors assert that original domiciliary probate of Mrs. Hungerford's will in solemn form was obtained by them in Georgia, with all beneficiaries and heirs at law of testatrix, including her husband, Robert Hungerford, actual parties by personal service. These, it is conceded, were all the parties under the law of Georgia entitled to be heard on the probate of the will. The respondent administrator c. t. a. was not a party. The record of probate includes a determination by special finding, over the objection of the caveator, the husband, that the testatrix was domiciled in Georgia. The special finding was specifically approved as an essential fact to determine the jurisdiction of the Court of Ordinary by the highest court of Georgia in its affirmance of the probate. *Hungerford* v. *Spalding*, 183 Ga. 547, 189 S. E. 2.

These facts were alleged by petitioners in their statement of claim to the stock filed below in response to the decree of interpleader. Exemplified copies of the probate record of the several Georgia courts were pleaded and proven, as were the applicable Georgia statutes governing domiciliary probate. From the facts alleged, petitioners inferred the conclusive establishment of the place for domiciliary distribution against "all persons," and prayed the issue to them of new certificates. An offer was made to pay all Delaware taxes or charges on the stock. At the trial, petitioners relied upon Article IV, § 1, of the Federal Constitution,[1] the full faith and credit clause, as determinative of their right to the new certificates. The

---

[1] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

pleading and trial contention adequately raised the Constitutional question. *Tilt* v. *Kelsey,* 207 U. S. 43, 50.

Respondent admitted that all parties entitled under the law of Georgia to be heard in opposition to probate were actually before the Georgia courts. It denied that Mrs. Hungerford was domiciled in Georgia or that the Georgia judgment of domicile and probate was binding on it, and averred testatrix's domicile at death was New York. It further averred that there were New York creditors of the estate interested in the proper and lawful administration of the estate, and that New York had certain claims for inheritance and estate taxes. Its own subsequent appointment by the Surrogate's Court of New York County, New York, on the suggestion of testatrix's husband and the State Tax Commission, was pleaded with applicable provisions of New York probate and estate tax law. By stipulation it was established that petitioners and the heirs and beneficiaries of testatrix, except her husband, who was an actual party, were notified of the New York proceedings for probate only by publication or substituted service of the citation in Georgia, and did not appear. As a domiciliary administrator c. t. a., the respondent prayed the issue to it of new certificates for the stock in controversy.

The trial court concluded from the evidence adduced at the hearings that the testatrix was domiciled in Georgia. It was therefore, as the court stated, unnecessary for it to consider the binding effect of the Georgia judgment.[2] The Supreme Court of Delaware reversed this finding of fact, determined that New York was testatrix's domicile and denied petitioners' contention that Article IV, § 1, of the Constitution required the award of the certificates of stock to the Georgia executors. The Coca-Cola

---

[2] *Coca-Cola International Corp.* v. *New York Trust Co.,* 2 A. 2d 290, 8 A. 2d 511.

Corporation was directed to issue its stock certificate to the respondent, the New York administrator c. t. a. *New York Trust Co.* v. *Riley,* 16 A. 2d 772. Because of the importance of issues previously undecided by this Court, certiorari was granted to review the alleged error, to wit, the asserted denial of full faith and credit to the Georgia judgment. 313 U. S. 555.

The constitutional effect of the Georgia decree on a claim in his own name in another state by a party to the Georgia proceedings is not here involved.[3] The question we are to decide is whether this Georgia judgment on domicile conclusively establishes the right of the Georgia executors to demand delivery to them of personal assets of their testatrix which another state is willing to surrender to the domiciliary personal representative,[4] when another representative, appointed by a third state, asserts a similar domiciliary right. For the purpose of this review, the conclusion of Delaware that the testatrix was in fact domiciled in New York is accepted. The answer to the question lies in the extent to which Article IV, § 1, of the Constitution, as made applicable by R. S. § 905,[5] nevertheless controls Delaware's action.

This clause of the Constitution brings to our Union a useful means for ending litigation. Matters once decided between adverse parties in any state or territory are at rest. Were it not for this full faith and credit provision,

---

[3] The Supreme Court of Delaware was of this opinion. It said: We are not "called upon to consider the operation of a judgment in a probate proceeding in one jurisdiction as an estoppel against one who, although a party to that proceeding, undertakes, in a proceeding in another jurisdiction affecting the same decedent's estate, to raise again the question of the decedent's domicile." 16 A. 2d 772, 788.

[4] Cf. Page, Wills (3d Ed.) § 727.

[5] "And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." 28 U. S. C. § 687.

so far as the Constitution controls the matter, adversaries could wage again their legal battles whenever they met in other jurisdictions. Each state could control its own courts but itself could not project the effect of its decisions beyond its own boundaries. Cf. *Pennoyer* v. *Neff*, 95 U. S. 714, 722. That clause compels that controversies be stilled, so that, where a state court has jurisdiction of the parties and subject matter, its judgment controls in other states to the same exent as it does in the state where rendered. *Roche* v. *McDonald*, 275 U. S. 449, 451. This is true even though the cause of action merged in the judgment could not have been enforced in the state wherein the enforcement of the judgment is sought. *Christmas* v. *Russell*, 5 Wall. 290, 302; *Fauntleroy* v. *Lum*, 210 U. S. 230, 236.[6] By the Constitutional provision for full faith and credit, the local doctrines of *res judicata*, speaking generally, become a part of national jurisprudence, and therefore federal questions cognizable here.

The Constitution does not require, *M'Elmoyle* v. *Cohen*, 13 Peters 312, 328; *Milwaukee County* v. *White Co.*, 296 U. S. 268, 276, nor does Delaware provide, that the judgments of Georgia have the force of those of her own courts. A suit in Delaware must precede any local remedy on the Georgia judgment. Subject to the Constitutional requirements, Delaware's decisions are based on Delaware jurisprudence. Her sovereignty determines personal and property rights within her territory. Subject to Constitutional limitations, it was her prerogative to distribute the property located in Delaware or to direct its transmission to the domiciliary representative of the deceased. *Iowa* v. *Slimmer*, 248 U. S. 115, 121. The full faith and credit clause allows Delaware, in disposing of local assets, to determine the question of domicile anew for any inter-

---

[6] There are limitations on the generality of the statement. *Pacific Ins. Co.* v. *Commission*, 306 U. S. 493, 502, and cases there cited.

ested party who is not bound by participation in the Georgia proceeding. *Thormann* v. *Frame,* 176 U. S. 350, 356; *Overby* v. *Gordon,* 177 U. S. 214, 227; *Burbank* v. *Ernst,* 232 U. S. 162; *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394, 400. It must be admitted that this reëxamination may result in conflicting decisions upon domicile, but that is an inevitable consequence of the existing federal system, which endows its citizens with the freedom to choose the state or states within which they desire to carry on business, enjoy their leisure or establish their residences. *Worcester County Co.* v. *Riley,* 302 U. S. 292, 299.[7] But, while allowing Delaware to determine domicile for itself, where any interested party is not bound by the Georgia proceedings, the full faith and credit clause and R. S. § 905, note 5, *supra,* do require that Delaware shall give Georgia judgments such faith and credit "as they have by law or usage" in Georgia.

We note, but need not discuss at length, the respondent's contention that our application of Georgia law is limited to the statutes, decisions and usages of that state pleaded or proven in the Delaware proceedings,[8] and that

---

[7] A collection of cases dealing with this topic may be found in 121 A. L. R. 1200.

[8] *Adam* v. *Saenger,* 303 U. S. 59, 62, 63; *Gasquet* v. *Lapeyre,* 242 U. S. 367; *Tilt* v. *Kelsey,* 207 U. S. 43, 57; *Chicago & Alton Railroad* v. *Wiggins Ferry Co.,* 119 U. S. 615, 622; *Hanley* v. *Donoghue,* 116 U. S. 1, 6.

Del. Rev. Code (1935) § 4695—"Statutes of Other States:—Printed copies of Statutes of any other of the United States, if purporting to be published under the authority of their respective governments, or if commonly admitted and read as evidence in their courts, shall be prima facie evidence of such law."

Del. Rev. Code (1935) § 4696—"Common Law of Other States:— The common, or unwritten, law of any other of the United States, may be proved as facts by parole evidence; and the reports of cases adjudged in their courts, and published by authority, may also be admitted as evidence of such law."

for such further rules of law, as may be needed to reach a conclusion here, we must necessarily, in reviewing a Delaware judgment, rely upon the law which, in the absence of proof of other Georgia law, properly guided the state courts, that is, the Delaware law.[9]  At any rate, the cases relied upon by petitioners to establish the Georgia law, *Tant* v. *Wigfall,* 65 Ga. 412, and *Wash* v. *Dickson,* 147 Ga. 540, 94 S. E. 1009, are cited in the opinion of the Supreme Court of Georgia pleaded in these proceedings.  We think they may be considered by us under the Delaware law.  No objection below was made by respondent to the citations. The opinion of the Georgia Supreme Court was properly in the record and, in the absence of a contrary ruling by Delaware, we are of the view that they may be properly considered here.[10]

In 1899 the Superior Court clearly stated the rule: "It is a general rule of law that whenever a foreign statute is relied upon it must be pleaded, and this court will not take judicial notice of the laws of our sister states or of a foreign country." *Thomas* v. *Grand Trunk Ry. Co.,* 1 Pennewill 593, 596, 42 A. 987, 988.  This rule has been quite strictly applied in subsequent cases. *Wolf* v. *Keagy,* 3 W. W. Harr. 362, 136 A. 520 (Super. Ct. 1927); *Mackenzie Oil Co.* v. *Omar Oil & Gas. Co.,* 4 W. W. Harr. 435, 154 A. 883 (Super. Ct. 1929); *Nye Odorless Incinerator Corp.* v. *Felton,* 5 W. W. Harr. 236, 162 A. 504 (Super. Ct. 1931); *Royal Ins. Co.* v. *Simon,* 20 Del. Ch. 297, 174 A. 444 (1934); *Holland* v. *Universal Life Co.,* 7 W. W. Harr. 39, 180 A. 328 (Super. Ct. 1935); *Silverman* v. *National Assets Corp.,* 12 A. 2d 389 (Del. Ch. 1940).

[9] *Bouree* v. *Trust Francais,* 14 Del. Ch. 332, 127 A. 56.  Of this law, we take judicial knowledge. *Owings* v. *Hull,* 9 Pet. 607, 624; *Bowen* v. *Johnston,* 306 U. S. 19, 23.

[10] Cf. *Elsner* v. *United American Utilities, Inc.,* 21 Del. Ch. 73, 75, 180 A. 589, 590, affirmed 12 A. 2d 389,—

"On the brief filed by the solicitor for the claimant there are quotations from *sections* 181, 208 and 209 of the *New York Tax Law.* Whether these sections are a part of *article* 9 (*section* 180 *et seq.*) or of *article* 9–A (*section* 208 *et seq.*) of the statute referred to in the notice of claim, I do not know.  No point has been made by the solicitors for the receivers to the effect that the New York statute has not been

We find nothing in either of these cases, however, which would lead to the conclusion that, in Georgia, the New York administrator c. t. a. was in privity, so far as the sequestration of assets for the payment of death taxes or indebtedness of decedent or her estate is concerned, with any parties before the Georgia court, or that the New York representative could not take steps in Georgia courts which might result in its getting possession of any assets which under the Georgia law of administration would be properly deliverable to a foreign domiciliary administrator. In the *Tant* case, Georgia refused to permit a collateral attack on a judgment of probate allegedly entered without jurisdiction of the subject matter. It was held that such attack must be made in the court where judgment was rendered. The effect of a judgment entered without jurisdiction of the persons whose rights were purportedly affected was not discussed. In the *Wash* case, there was simply a ruling that a judgment of the Court of Ordinary could not be collaterally attacked by parties or privies, unless the record negatived the existence of necessary "jurisdictional facts." Whom the court would classify as "privies" to a judgment *in personam* does not appear, and the opinion of the court below makes it amply plain that there was no privity under Delaware law. Hence, if the Georgia judgment is to bind the New York administrator, it can be considered to do so only *in rem*.

By § 113–602, Georgia Code of 1933, set up by petitioner as a basis for his contention as to the finality of the Georgia judgment in Delaware, it is provided that the Court of Ordinary is given exclusive jurisdiction over the probate of wills and that "such probate is conclusive upon

properly pleaded and introduced in evidence. I shall assume then that the quotations in the brief filed in behalf of the State of New York are correct extracts from the New York statute and that by tacit agreement they may be considered as though they were properly in the record."

all the parties notified, and all the legatees under the will who are represented in the executor." All the parties entitled to be heard in opposition to the probate, including Mr. Hungerford, were actually before the Court of Ordinary. It may be assumed that the judgment of probate and domicile is a judgment *in rem* and therefore, as "an act of the sovereign power," "its effects cannot be disputed" within the jurisdiction.[11] But this does not bar litigation anew by a stranger, of facts upon which the decree *in rem* is based.[12] Hence it cannot be said, we think, that because respondent would have no standing in Georgia to contest the probate of a will and, we assume, the preliminary determination of domicile, held necessary in *Hungerford* v. *Spalding,* 183 Ga. 547, 550, 189 S. E. 2, 3, thereafter respondent could not file a claim in Delaware, dependent upon domiciliary representation of testatrix, for assets in the latter state. While the Georgia judgment is to have the same faith and credit in Delaware as it does in Georgia, that requirement does not give the Georgia judgment extra-territorial effect upon assets in other states. So far as the assets in Georgia are concerned, the Georgia judgment of probate is *in rem;* so far as it affects personalty beyond the state, it is *in personam* and can bind only parties thereto or their privies. This is the result of the ruling in *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394, 400.[13] Phrased

---

[11] See *Brigham* v. *Fayerweather,* 140 Mass. 411, 413, 5 N. E. 265, 266. The Georgia Supreme Court intimated in one of the other cases cited in the *Hungerford* opinion, that if a person was not heard in probate because of a supposed lack of interest, but was in fact interested, he would not be bound by the probate decree. *Wetter* v. *Habersham,* 60 Ga. 193, 202; cf. *Young* v. *Holloway,* [1895] P. 87; *Estate of Seaman,* 51 Cal. App. 409, 196 P. 928.

[12] Cf. *Brigham* v. *Fayerweather,* 140 Mass. 411, 413; *Tilt* v. *Kelsey,* 207 U. S. 43, 51–53; *Luke* v. *Hill,* 137 Ga. 159, 161–62, 73 S. E. 345, 346.

[13] Illustrative state cases.

A will is admitted to original domiciliary probate in state *A*. Thereafter an ancillary proceeding is commenced in state *B* based upon the

somewhat differently, if the effect of a probate decree in Georgia *in personam* was to bar a stranger to the decree from later asserting his rights, such a holding would deny procedural due process.

It seems quite obvious that the administrator c. t. a. appears in Delaware as an agency of the State of New York, and not as the *alter ego* of the beneficiaries of the Hungerford estate. In its answer to the petitioners' statement of claim, it established its status by alleging

---

domiciliary determination of *A*. At that point a beneficiary, a stranger to the proceeding in *A*, appears and asserts that the decedent was domiciled in *B*. The determination of domicile by state *A* will not be recognized by state *B*, but state *B* will take evidence and redetermine the issue of domicile. *Estate of Clark*, 148 Cal. 108, 82 P. 760; *Holyoke* v. *Estate of Holyoke*, 110 Me. 469, 87 A. 40 (semble); *In re Mauldin's Estate*, 69 Mont. 132, 220 P. 1102 (semble); *Strathmann* v. *Kinkelaar*, 105 Okla. 290, 233 P. 215 (semble); *Richards* v. *Huff*, 146 Okla. 108, 293 P. 1028; cf. *Estate of Reynolds*, 217 Cal. 557, 20 P. 2d 323; *In re Coppock's Estate*, 72 Mont. 431, 234 P. 258; *Matter of Gifford*, 279 N. Y. 470, 18 N. E. 2d 663; *McEwen* v. *McEwen*, 50 N. Dak. 662, 197 N. W. 862. *Contra, Corrigan* v. *Jones*, 14 Colo. 311, 23 P. 913; *Kurtz* v. *Stenger*, 169 Md. 554, 182 A. 456.

If the objector was privy to the proceeding in state *A*, state *B* will not redetermine the issue of domicile. *Willetts' Appeal*, 50 Conn. 330; *Torrey* v. *Bruner*, 60 Fla. 365, 53 So. 337; *Loewenthal* v. *Mandell*, 125 Fla. 685, 170 So. 169; *Succession of Gaines*, 45 La. Ann. 1237, 14 So. 233.

Where the proceeding in state *B* is by a stranger to the proceedings for original domiciliary probate in state *A* upon the theory that the domicile is actually *B*, state *B* will determine domicile for itself. *Scripps* v. *Wayne Probate Judge*, 131 Mich. 265, 90 N. W. 1061; *In re Crane's Estate*, 205 Mich. 673, 172 N. W. 584; *Pusey's Estate*, 321 Pa. 248, 184 A. 844; see *Matter of Horton*, 217 N. Y. 363, 371, 111 N. E. 1066, 1068.

Where the person seeking to establish domicile in state *B*, and to have original domiciliary probate there, was a party to the proceeding in state *A*, state *B* will not redetermine domicile. *Hopper* v. *Nicholas*, 106 Ohio 292, 140 N. E. 186; cf. *Thomas* v. *Morrisett*, 76 Ga. 384; *In re Fischer*, 118 N. J. Eq. 599, 180 A. 633.

that not merely the beneficiaries but creditors residing in New York and the State of New York were interested in the estate, that its appointment as temporary administrator had been sought by the New York Tax Commissioner "to protect the claim of the State of New York to inheritance and succession taxes," that the State of New York was asserting such claims in substantial amount on the theory that the domicile was New York, and that, under New York law, as evidenced by statutes likewise pleaded, an administrator was "vested by law with the right to possession and control over and to exercise all manner of dominion over all of the goods and chattels and personal property of every kind and description of the estate of a decedent."

A state is interested primarily not in the payment of particular creditors, nor in the succession of heirs or beneficiaries, as such, but in the administration of the property of its citizens, wherever located, and that of strangers within its boundaries. In a society where inheritance is an important social concept, the managing of decedents' property is a sovereign right which may not be readily frustrated.

Georgia and New York might each assert its right to administer the estates of its domiciliaries to protect its sovereign interests, and Delaware was free to decide for itself which claimant is entitled to receive the portion of Mrs. Hungerford's personalty within Delaware's borders.

*Affirmed.*

MR. CHIEF JUSTICE STONE:

I concur upon the single ground that the New York administrator was not bound by the Georgia judgment. He was not a party to the Georgia proceedings, nor was he represented by any of those who were parties. As administrator appointed under the New York statutes, he

was charged with the duty of administering the estate of the decedent and paying inheritance taxes upon it. His interest so far as he owes duties to the state is therefore adverse to that of the husband and the next of kin, who alone were parties to the Georgia proceeding. To have bound him by representation of those so adverse in interest would have been a denial of due process. *Hansberry* v. *Lee,* 311 U.S. 32. A judgment so obtained is not entitled to full faith and credit with respect to those not parties. *Pink* v. *A. A. A. Highway Express,* 314 U. S. 201; *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394; *Blodgett* v. *Silberman,* 277 U. S. 1, 18. Any other conclusion would foreclose New York from litigating its right to collect taxes lawfully due, by the simple expedient of a probate by the next of kin of the will of the decedent as the domiciled resident of another state, without notice to any representative of New York or opportunity to be heard.

It is unnecessary to consider the other questions discussed by the opinion.

MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON concur in this opinion.