IN RE COPPOCK'S ESTATE. WHARTON ET AL., APPEL-
LANTS, *v.* COPPOCK, RESPONDENT.

(No. 5,572.)

(Submitted February 13, 1925. Decided March 2, 1925.)

[234 Pac. 258.]

*Foreign Wills — Probate — Contest — Jurisdiction—Domicile—*
*Personal Property—Situs.*

Foreign Wills—Probate—Jurisdiction—Judgment of Foreign Court Con-
clusive, When.
    1. Where the court of a foreign state or country which admitted
    a will to probate in the first instance had jurisdiction of the
    subject matter, its judgment is conclusive as to the validity of the
    will.

---

1. Conclusiveness in domestic courts of foreign will duly probated abroad, see notes in 9 **Ann. Cas.** 422; 14 **Ann. Cas.** 977; **Ann. Cas.** 1918A, 614.
    Conclusiveness and effect of probate of will in another state, see notes in 13 **Am. Dec.** 53; 115 **Am. St. Rep.** 518.

Same—Judgment of Foreign Court—Full Faith and Credit Clause of Constitution—When Courts not Concluded by.
    2.   Neither the full faith and credit clause of the federal Constitution nor the legislation enacted in pursuance thereof compels the courts of this state to give recognition to the judgment of the United States district court for China in admitting a will to probate there, if that court did not have jurisdiction to render it.

Domicile—What Constitutes.
    3.   The place of one's residence is *prima facie* the place of his domicile, the essential elements of domicile being residence and the intention to make the place of residence the home.

Wills—Domicile—American Citizen may Acquire Domicile in China.
    4.   *Held*, that an American citizen may acquire a domicile in China, and that therefore, assuming as correct the assertion of both parties to an appeal from an order admitting to probate in this state a will executed and probated in that country that the jurisdiction of the United States district court for China to administer the estate of decedent depended upon whether he had his domicile there at the time of his death, his domicile in that country being conceded, the court admitting it to probate in the first instance had jurisdiction to do so, and hence dismissal of the contest in Montana was proper.

Same—Personal Property—Legal *Situs*—"*Mobilia Sequuntur Personam.*"
    5.   Under the maxim "*mobilia sequuntur personam*" the legal *situs* of personal property actually present in this state was in the place of the owner's domicile at the time of his death—in China—and under section 7069, Revised Codes of 1921, the interpretation of his will, so far as the disposition of that property is concerned, is governed by the law of his domicile.

*Appeal from District Court, Fergus County; Rudolf Von Tobel, Judge.*

PROCEEDINGS by Ida J. Wharton and another to revoke an order admitting to probate the will of Grace Lydia Coppock, in which Ed. G. Coppock appeared as contestee. From a judgment dismissing the contest, contestants appeal. Affirmed.

Cause submitted on briefs of Counsel.

---

2.   Ancillary probate of will of resident which has been probated abroad, see note in 7 **Ann. Cas.** 313.

3.   Domicile, how ascertained, see note in 59 **Am. Dec.** 111.
    Terms synonymous with "domicile," see note in **Ann. Cas.** 1915C, 783, 796, 804, **Ann. Cas.** 1917B, 726.

4.   Contest of foreign will after probate, see note in 9 **Ann. Cas.** 424.

5.   Jurisdiction of probate court to construe wills, see note in 5 **Ann. Cas.** 473.

*Mr. Ralph J. Anderson,* for Appellants.

*Mr. E. K. Matson,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This cause was submitted to the trial court upon an agreed statement of facts, from which it appears that on October 12, 1921, Grace Lydia Coppock, a citizen of the United States residing in China, made and published her last will and testament and three days later died at Shanghai, leaving as her only heirs at law a sister, Ida J. Wharton, and two brothers, Charles E. Coppock and Ed. G. Coppock. Her estate consists principally of personal property in Fergus county, Montana, and the proceeds of a life insurance policy. By the terms of the will Miss Margaret Mackinlay, of Shanghai, was nominated executrix to have charge of the estate in China, and Ed. G. Coppock was nominated executor to manage the estate in this country. Aside from some inconsequential items, all of the property was bequeathed to the National Committee of the Young Women's Christian Association of China in trust for charitable and benevolent purposes.

The will was first admitted to probate by the United States district court for China and letters testamentary were issued to Miss Mackinlay. Later a duly authenticated copy of the will and probate thereof was presented to the district court of Fergus county, and such proceedings were had under the provisions of sections 10040 and 10041, Revised Codes, that the will was admitted to probate and letters were issued to Ed. G. Coppock. Ida J. Wharton and Charles E. Coppock then instituted this proceeding to secure a revocation of the order admitting the will to probate in Fergus county, but a judgment was rendered dismissing the contest, and they appealed.

It is too well settled to be open to further controversy that [1, 2] if the court which admitted the will to probate in the

72 Mont.—28

first instance had jurisdiction of the subject matter, its judg-
ment is conclusive as to the validity of the will.  (*State ex rel.
Ruef* v. *District Court*, 34 Mont. 96, 115 Am. St. Rep. 510,
9 Ann. Cas. 418, 6 L. R. A. (n. s.) 617, 85 Pac. 866), but
it is equally well settled that neither the full faith and credit
clause of the Constitution (sec. 1, Art. IV, U. S. Const.), nor
the legislation enacted in pursuance thereof, compels the courts
of this state to give recognition to the judgment of the district
court in China if that court did not have jurisdiction to render
the judgment in question.  (Burdick, The Law of the Ameri-
can Constitution, 477.)  In other words, the question of juris-
diction may be raised by these contestants (*In re Mauldin's
Estate*, 69 Mont. 132, 220 Pac. 1102), and the purpose of this
proceeding is to have that question determined.

Counsel for both parties assume that under the common law
which is enforced by the United States court in China, the
jurisdiction to administer primarily upon an estate depends
upon the domicile of the deceased at the time of his death (23
C. J. 1010), and for the purpose of this appeal we adopt that
theory even in the broad terms stated.

It is a general rule that the place of one's residence is *prima
[3, 4]  facie* the place of his domicile (*Ennis* v. *Smith*, 14 How.
(U. S.) 400, 14 L. Ed. 472 [see, also, Rose's U. S. Notes]); but
counsel for appellants contend that the rule cannot have
application here, for, it is contended earnestly, a citizen of
the United States cannot acquire a domicile in China or in any
other oriental country which by capitulations or treaties ex-
tends to our nationals residing there, exemption from the
operation of the ordinary local laws, and support for this
theory is to be found in certain decisions of English courts.
In the leading case, *In re Tootal's Trust*, L. R. 23, Ch. Div.
532, decided in 1889, it was held that a British national could
not acquire a domicile in China.  The decision by Justice
Chitty was grounded principally upon the doctrine of immis-
cibility announced by Sir William Scott (Lord Stowell) in
*The Indian Chief*, 3 C. Rob. Adm. 22, the statement by

Dr. Lushington in *Maltrass* v. *Maltrass,* 1 Rob. Ecc. 67, to the
effect that "every presumption is against the intention of
British Christian subjects voluntarily becoming domiciled in the
dominions of the Porte," and the assumption that an individ-
ual cannot become domiciled in a community "which is not
the community possessing the supreme or sovereign territorial
power." The decision was cited approvingly in *Abd-ul-Messih*
v. *Farra,* L. R. 13 App. Cas. 431, in *The Derfflinger,* 1 Br.
& Col. P. C. 386, and in *Casdagli* v. *Casdagli,* 87 L. J. R. Probate,
73. In the last case, decided by the court of appeals in 1917,
there was a vigorous dissenting opinion by Scrutton, L. J. In
the meantime a contrary conclusion had been announced by the
United States district court for the district of China (*In re
Allen's Will,* 1 Extrater. Cas. 92) and by the supreme judicial
court of Maine (*Mather* v. *Cunningham,* 105 Me. 326, 18 Ann.
Cas. 692, 29 L. R. A. (n. s.) 761, 74 Atl. 809). These con-
flicting decisions were reviewed at length by Charles H.
Huberich, of Stanford University (24 Law Quarterly Review,
440), and by Edwin D. Dickinson of the University of Michi-
gan (17 Michigan Law Review, 437). Each of these writers
criticised adversely the decisions of the English courts and, in
principle at least, approved the conclusion reached by the
courts of our own country. Hall, an eminent English au-
thority on Private International Law, assumed that *Tootal's
Trust* and *Abd-ul-Messih* v. *Farra* had settled the law in
England, but expressed regret that it had not been modified
by an Order in Council (Hall's Foreign Jurisdiction of the
British Crown, 184); while Sir Francis Piggott, erstwhile
Chief Justice in Hong Kong, and Professor Westlake, still
regarded the question unsettled in England, ventured to
predict that a different result might be reached later (West-
lake's Private International Law, 4th ed., 311; Piggott's
Exterritoriality, 216), and their prophecies were fulfilled.
*Casdagli* v. *Casdagli* was appealed to the House of Lords, and
in October, 1918, the decision of the court of appeals was
reversed and the doctrine announced in *Tootal's Trust* and

*Abd-ul-Messih* v. *Farra* disapproved (1919 App. Cas. 145).
It was held that a citizen of Great Britain may acquire a
domicile in Egypt even though the British government exer-
cises extraterritorial jurisdiction in that country. By this de-
cision of the court of last resort, the question was settled in
England in harmony with the views of our own country.

Vattel defines "domicile" as "a fixed residence in any place
with an intention of always staying there." (Vattel's Law of
Nations, Chitty's ed., 103.) Story observes: "It would be more
correct to say that that place is properly the domicile of a
person in which his habitation is fixed without any present
intention of removing therefrom." (Story on Conflict of
Laws, p. 43.) Whether we accept one or the other of these
definitions, or the more elaborate one given by Dicey (Dicey,
Conflict of Laws, 789), it is apparent at once that neither the
doctrine of immiscibility nor the doctrine of extraterritoriality
—factors stressed by the English courts in the earlier de-
cisions—enters into the proper conception of the term "domi-
cile." The authorities are all agreed that the two essential
elements are residence and the intention to make the place
of residence the home.

We are satisfied that an American citizen may acquire a
domicile in China, and it may be said fairly that there is not
now any authority to the contrary. We agree with the result
reached in *In re Allen's Will* and *Mather* v. *Cunningham,* and
conclude that Miss Coppock could establish a domicile in China
and did so, so far as disclosed by the record before us. It
follows that the United States court of the district of China
had jurisdiction to render the judgment admitting the will to
probate.

Although the property here involved is actually present in
[5] Fergus county, its legal "*situs*" is in the place of the
owner's domicile at the date of her death, under the familiar
maxim, "*Mobilia sequuntur personam,*" and section 7069,
Revised Codes of 1921, provides that the validity and interpre-
tation of a will, so far as the disposition of personal property

is concerned, are governed by the law of the testator's domicile, and this is the general rule. Section 7015, Revised Codes of 1921, has not any application.

The ground of the contest fails, and the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway, Associate Justices Stark and Matthews and Honorable C. W. Pomeroy, District Judge, sitting in place of Mr. Justice Galen, absent on account of illness, concur.